**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARISOL GOMEZ and IGNACIO OSORIO,<br><br>Plaintiffs,<br><br>v.<br><br>J. JACOBO FARM LABOR CONTRACTOR, INC.<br><br>Defendant. | CASE NO. 1:15-cv-01489-AWI-BAM<br><br>**ORDER RECONSIDERING ORIGINAL CLASS CERTIFICATION ORDER AND GRANTING CLASS CERTIFICATION**<br><br>(Doc. Nos. 114, 117) |

# I. Introduction

In this lawsuit a farm labor contractor is being sued by two of its employees for violating California's wage-and-hour laws and the federal Migrant and Seasonal Agricultural Workers Protection Act of 1983 ("MAWPA"). The two employees are Plaintiffs Marisol Gomez and Ignacio Osorio (collectively "Plaintiffs"). The farm labor contractor is Defendant J. Jacobo Farm Labor Contractor, Inc. ("Defendant").

Plaintiffs moved for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.[1] See Doc. No. 108. The Court issued an order granting, in part, and denying, in part, Plaintiff's motion for class certification. Particularly relevant here, the Court denied class certification for Plaintiffs' rest break claim and "derivative" claims. The Court's certification order, which hereafter will be referred to as the "original certification order," is Doc. No. 114 on the docket and is reported at 2019 WL 5787805 (E.D. Cal. Nov. 6, 2019) and 2019 U.S. Dist. LEXIS 193214 (E.D. Cal. Nov. 5, 2019).

Plaintiffs then moved the Court to reconsider the original certification order, arguing that the Court's denial of class certification for the rest break claim was based on an erroneous

---

[1] Plaintiffs also moved for class certification pursuant to Rule 23(b)(2), which the Court denied, but that issue is irrelevant to Plaintiffs' motion for reconsideration.

statement of law.  See Doc. No. 117.  Plaintiffs' motion for reconsideration is now before the Court, and for reasons discussed below, Plaintiffs' motion will be granted.

## II.  Facts

The original certification order includes a detailed and lengthy recitation of the facts relevant to Plaintiffs' motion for class certification.  All of the facts in the original certification order are controlling and remain unchanged for purposes of this order.  For the sake of convenience, the following is a brief summary of the original certification order's factual narrative and legal analyses that are most relevant to Plaintiffs' motion for reconsideration.

**1.      Defendant's employment practices.**

Defendant is a farm labor contractor.  At least 3,267 employees were employed by Defendant between December 20, 2011, and January 6, 2018.  Some of the employees worked as field workers.  For the most part, Defendant allowed the employees to decide when to take breaks and the length of the breaks.  A significant contingent of the class elected to forego their rest breaks by working through the provided rest breaks.  The identities of the employees who comprise this significant contingent are largely unknown and, moreover, cannot be known absent extensive individualized inquiries.

Defendant paid most of the employees on a piece-rate basis.  Of Defendant's 3,267 employees, 2,868 employees (or 87.8%) were paid on a piece-rate basis at some point during their employment.  Of those 2,868 piece-rate employees, 2,320 employees (or 80.1%) were paid with checks that did not include any payment for rest breaks.  Some but not all employees were retroactively paid by Defendant by check for previously unpaid break and non-productive time.  It appears that Defendant has payment records identifying the employees who were given retroactive "safe harbor" payments and minimum wage true-ups.

Defendant provided its employees with wage statements.  Some employees' wage statements failed to include information about rest breaks and rest payments.  Defendant universally applied the same system and practices for wage statements to all employees.

Defendant kept payroll records for its employees.  Defendant used a software called Datatech to process and maintain payroll records.  Defendant recorded in Datatech the payments

and paychecks that Defendant made to its employees. Defendant recorded in Datatech some rest break information of its employees. For example, Datatech information reveals that of the 18,376 paychecks issued to the 3,267 employees between December 20, 2011, and January 6, 2018, 2,910 paychecks (or 23%) contained rest break pay whereas the other 9,488 paychecks (or 76.5%) did not include any rest break pay.

**2.    Plaintiffs' causes of action.**

Plaintiffs' first amended complaint, which is the operative complaint, pleads the following causes of action against Defendant:

1) <u>Rest periods</u>: Defendant failed to provide timely and complete rest periods to its employees or pay additional wages to its employees in lieu of providing rest periods in violation of Cal. Lab. Code §§ 226.7, 512, and IWC Wage Orders 8, 13, 14

2) <u>Wages upon termination or resignation</u>: Defendant failed to pay wages to its terminated or resigned employees in violation of Cal. Lab. Code §§ 201, 202, and 203.

3) <u>Itemized wage statements</u>: Defendant failed to issue properly itemized wage statements to its employees in violation of Cal. Lab. Code §§ 226(B), 1174, 1175.

4) <u>MAWPA violations</u>: Defendant violated its employees' rights under MAWPA, 29 U.S.C. § 1801 <u>et seq.</u>, by:

   a. providing false and misleading information regarding terms and conditions of employment;

   b. violating the terms of Plaintiffs' working arrangements;

   c. failing to pay wages when due; and

   d. failing to provide accurate itemized written statements.

5) <u>Unfair business competition</u>: Defendant engaged in unfair business competition in violation of Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u> by engaging in the foregoing wage-and-hour violations.[2]

---

[2] The first amended complaint pleads other causes of action against Defendant, such as claims for meal breaks, overtime wages, and minimum wages. Although those claims were analyzed by the Court in the original certification order, those claims are not relevant here because they were not addressed in Plaintiffs' motion for reconsideration.

**3.     Original certification order.**

Pursuant to Rule 23(b)(3), Plaintiffs moved for class certification of the following "overarching" class and "rest period" subclass:

> Overarching Class: All individuals who have been employed or are currently employed, by Defendant J. Jacobo Farm Labor Contractor Inc. as a non-exempt "field worker" or agricultural laborer who worked at any time from September 30, 2011 to the present.
>
> Piece Rate Rest Period Subclass: All individuals who have been employed, or are currently employed, by Defendant as a non-exempt "field worker" or agricultural worker, who worked on a piece rate basis at any time from September 30, 2011 up to the present and were not separately compensated for rest periods during their piece rate shifts.

An important distinction between the overarching class and the rest period subclass is that the rest period subclass, unlike the overarching class, encompasses only employees who did not receive pay from Defendant for rest breaks.[3]

In Plaintiffs' motion for class certification, Plaintiffs argued that class certification was warranted for the rest break claim because Defendant had a class-wide practice of not paying its piece-rate employees for rest breaks, which in turn means that a common and predominating question suitable for class treatment is whether Defendant paid the rest period subclass for rest breaks, as required by California law.

Plaintiffs also argued that their derivative claims — namely, the claims for wages paid upon termination, accurate itemized wage statements, MAWPA, and unfair business practices — warranted class treatment under Rule 23(b)(3) because Defendant's liability for those derivative claims is directly premised on whether Defendant paid the rest period subclass for rest breaks. In other words, if Defendant failed to pay the rest period subclass for rest breaks, then Defendant is also liable for failing to pay all wages due upon termination, failing to provide compliant wage statements, failing to comply with MAWPA, and engaging in unfair business practices.

By way of the original certification order, the Court ruled on Plaintiffs' motion for class certification. There the Court ruled that class treatment under Rule 23(b)(3) is not warranted for

---

[3] See Doc. No. 117 at 5 at n.1 (Plaintiffs representing that the rest period subclass only encompasses piece-rate employees who did not receive checks with separate pay for rest breaks).

the rest break claim because individualized questions predominated.  The Court premised this ruling on the following statement of law: an employer is not liable for failing to pay for a provided rest break if the piece-rate employee voluntarily worked through the provided rest break.  As will be discussed below, it is this statement of law that Plaintiffs contend is erroneous.  The Court explained why, in light of this statement of law, Plaintiffs' rest break claim failed to satisfy the commonality-predominance test of Rule 23(b)(3):

> Insofar as the rest break claim is premised on the theory that Defendant failed to pay its employees for the rest breaks — a theory that is distinct from, although related to, the foregoing theory that Defendant failed to provide rest breaks — there are additional individualized questions.  [A] significant contingent of the class elected to forego their rest breaks by working through the provided rest breaks, and they did so to make more money on a piece-rate basis. . . .  The identities of the employees who comprise this significant contingent are largely unknown and, moreover, cannot be known absent extensive individualized inquiries.  <u>That is problematic because such employees were paid a piece-rate for the work they conducted during the foregone rest breaks; therefore, liability is not triggered and these employees are not entitled to additional compensation for the foregone rest breaks</u>. . . .
>
> . . . . <u>In order to determine whether and to what extent Defendant is liable for failing to pay for provided rest breaks, an individualized inquiry will be required to determine, first, which employees in the class took unpaid rest breaks and, second, how many unpaid rest breaks these employees took</u> (which, by the flip-side of the same token, largely addresses how many rest breaks these employees worked through).  Although it appears that Defendant's payroll records can reveal whether and to which employees Defendant made rest break payments (as well as safe-harbor payments), the payroll records do not appear to reveal which particular employees elected to forego provided rest breaks and which and how many rest breaks were foregone by each particular employee.  Consequently, even in light of Defendant's payroll records and policies for paying (or not paying) for provided rest breaks, extensive individualized inquiries will still be required. . . .
>
> The foregoing individualized questions are at the heart of Plaintiffs' rest break claim, and this is because liability hinges on whether Defendant provided and paid its employees for rest breaks.  Consequently, the individualized questions predominate over any common questions at play.  Accordingly, class certification under Rule 23(b)(3) is not warranted and will be denied as to Plaintiffs' rest break claim.

Doc. No. 114 (citations omitted and emphasis added).

Because the Court concluded that Plaintiffs' rest break claim did not warrant class treatment, the Court also concluded that the derivative claims did not warrant class treatment.

/ / /

5

## III. Plaintiffs' Motion for Reconsideration

**1.      Plaintiffs' arguments.**

Plaintiffs argue that the Court should, pursuant to its inherent powers, reconsider its denial of class certification for the rest break and derivative claims because the denial is premised on an erroneous statement of law. As stated above, the contested statement of law is that an employer is not liable for failing to pay for a provided rest break if the piece-rate employee voluntarily worked through the provided rest break.

According to Plaintiffs, the correct statement of law goes as follows: if an employer provides its piece-rate employee with a rest break but fails to pay the employee for the rest break, then the employer is liable — regardless of whether the piece-rate employee voluntarily works through the provided rest break. See Doc. No. 117 (Plaintiffs' motion for reconsideration citing Cal. Labor Code § 226.2 and Bluford v. Safeway Inc., 216 Cal. App. 4th 864, 872 (2013)). Therefore, according to Plaintiffs, Defendant's universal practice of providing rest breaks but not paying the rest period subclass for the rest breaks naturally lends itself to class treatment under Rule 23(b)(3). This is because, according to Plaintiffs, the common and predominating question is whether Defendant paid the rest period subclass for the rest breaks, and answering that question can be accomplished for the subclass using Defendant's payroll records, and answering that question "will resolve an issue that is central to the validity of [the rest break claim] in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Plaintiffs also argue that because the rest break claim warrants class treatment, so too do the derivative claims.

**2.      Defendant's arguments.**

Defendant argues that the Court's denial of class certification for the rest break and derivative claims is legally sound and should not be disturbed. According to Defendant, the Court correctly concluded that individualized inquiries predominated for Plaintiffs' rest break claim and, in turn, the derivative claims. Defendant also argues that reconsideration of the original certification order is not warranted because Plaintiffs failed to show "new or different facts or circumstances . . . which did not exist or were not shown upon [Plaintiff's class certification

6

motion]," which Defendant contends is a requirement for reconsideration under the Court's Local Rule 230(j). Doc. No. 123 (quoting L.R. 230(j)).

**3.      Legal standard.**

"The general rule regarding the power of a district court to rescind an interlocutory order is as follows: As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (citations omitted). "A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure," such as Rule 60. Id. at 886. "Rule 60 does not affect, interfere with, or curtail the common-law power of the federal courts, but . . . the broad power, which was theirs by the common law, to deal with situations where . . . relief should be granted from manifest error, remained inherent in the courts." Bucy v. Nevada Const. Co., 125 F.2d 213, 217 (9th Cir. 1942) (cited with approval by Santa Monica Baykeeper, 254 F.3d at 887).

The foregoing rule does not violate the law of the case doctrine. "The law of the case doctrine originated in the courts as a means of ensuring the efficient operation of court affairs." Santa Monica Baykeeper, 254 F.3d at 888 (citations omitted). "Specifically, this doctrine was designed to further the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." Id. (citations and quotations omitted). "While courts are generally urged to adhere to this doctrine, it is not an inexorable command." Id. (citations and quotations omitted). "That is, the doctrine is discretionary, not mandatory and is in no way a limit on a court's power." Id. (citations and quotations omitted). "The doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." Id. The Ninth Circuit clarified this point in United States v. Houser, 804 F.2d 565 (9th Cir. 1986), stating:

///

7

> The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. All rulings of a trial court are subject to revision at any time before the entry of judgment. A trial court may not, however, reconsider a question decided by an appellate court.

Houser, 804 F.2d at 567 (cited with approval by Santa Monica Baykeeper, 254 F.3d at 889). "A contrary conclusion would be irreconcilable with the above-mentioned rule that as long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Santa Monica Baykeeper, 254 F.3d at 889.

**4.    Discussion.**

    **A.    The Court possesses the jurisdiction and inherent authority to reconsider and modify the original certification order.**

The Court's original certification order is an interlocutory order. See Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981); McKinsty v. Swift Transportation Co., of Arizona, LLC, 2017 WL 8943524, at *2 (C.D. Cal. Sept. 18, 2017). Because the Ninth Circuit has not granted a party permission to appeal the original certification order, the Court retains jurisdiction over the original certification order. Santa Monica Baykeeper, 254 F.3d at 886 ("A district court therefore retains jurisdiction over an interlocutory order — and thus may reconsider, rescind, or modify such an order — until a court of appeals grants a party permission to appeal."). Because the Court retains jurisdiction over the original certification order, the Court possesses the inherent power to reconsider and modify the order for cause seen by the Court to be sufficient, such as manifest legal error. Id. at 885; Bucy v. Nevada Const. Co., 125 F.2d 213, 217 (9th Cir. 1942).

As for Defendant's argument that Plaintiffs have not satisfied the "new or different facts or circumstances" standard of Local Rule 230(j), the Court considers this argument to be inapposite. First, Local Rule 230(j)'s procedural requirements for filing a motion or "application" for reconsideration do not constrict the Court's inherent authority to reconsider alleged legal errors in interlocutory orders. Second, Local Rule 230(j) does not require the Court to find "new or different facts or circumstances" before reconsidering an interlocutory order. Rather, Local Rule 230(j) requires the movant to set forth "what new or different facts or circumstances are claimed to

8

1 exist which did not exist or were not shown upon such prior motion, <u>or what other grounds exist</u>
2 <u>for the motion</u>." L.R. 230(j)(3) (emphasis added). Here Plaintiffs' motion for reconsideration
3 sufficiently set forth "other grounds" for reconsideration — namely, that the denial of class
4 certification was premised on an erroneous statement of law.

**B.** **The denial of class certification for the rest break claim was premised on an erroneous legal conclusion that warrants reconsideration and modification.**

7 As previously stated, the Court denied class certification for rest break claim because the
8 Court concluded that an employer is not liable under California law for failing to pay for a
9 provided rest break if the piece-rate employee voluntarily worked through the rest break. The
10 Court agrees with Plaintiffs that this was a legal error.

11 Section 226.7 of the California Labor Code together with IWC Wage Order No. 14-2001
12 ("Wage Order No. 14"), which is codified at 8 Cal. Code Regs. tit. 8, § 11140, govern rest breaks for
13 non-exempt agricultural employees. Section 226.7 requires employers to provide rest breaks
14 consistent with the applicable wage order. Wage Order No. 14 requires employers of agricultural
15 workers to provide rest breaks, and Wage Order No. 14 also requires employers to count authorized
16 rest breaks "as hours worked for which there shall be no deduction from wages." 8 Cal. Code Regs.
17 tit. 8, § 11140(12). "The wage order's requirement not to deduct wages for rest periods presumes the
18 [employees] are paid for their rest periods." Bluford v. Safeway Inc., 216 Cal. App. 4th 864, 871
19 (2013) (interpreting similar language in Wage Order Nos. 7 and 9, Cal. Code Regs. tit. 8, §§
20 11070(12); 11090(12)). This means that in a piece-rate system, authorized rest breaks "must be
21 separately compensated" and "are considered hours worked." Bluford, 216 Cal. App. 4th at 872.

22 Upon reconsideration, the Court now concludes that the foregoing law means that an
23 employer is liable for violating California's rest break laws if the employer provides a piece-rate
24 employee with a mandated rest break but fails to pay the employee for the rest break — regardless
25 of whether the employee voluntarily works through the provided rest break. This conclusion
26 harmonizes with the foregoing law, which states that employers must separately pay piece-rate
27 employees for mandated rest breaks. See Bluford, 216 Cal. App. 4th at 872; Lennane v. Franchise
28 Tax Bd., 9 Cal. 4th 263, 268 (1994) (citations omitted) ("If there is no ambiguity in the language

9

of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.").

Further, this conclusion does not contravene or go beyond the foregoing law, which makes no mention of an alternative compensation framework for situations wherein piece-rate employees voluntarily work through provided rest breaks. Lennane v. Franchise Tax Bd., 9 Cal. 4th 263, 268 (1994) (citations and quotations omitted) ("Where the statute is clear, courts will not interpret away clear language in favor of an ambiguity that does not exist."). "California courts follow the 'knows-how-to-say' rule with respect to rest breaks in particular," Perez v. Sun Pac. Farming Co-op., Inc., 2015 WL 3604165, at *4 (E.D. Cal. June 8, 2015) (citations omitted), meaning the IWC and California legislature can, but chose not to, create an alternative compensation framework for situations wherein piece-rate employees voluntarily work through provided rest breaks. Also, it is worth noting that neither the Court nor the parties found controlling case law squarely dealing with the question of whether an employer is liable for failing to pay for a provided rest break if the piece-rate employee voluntarily worked through the provided rest break.

Further, this conclusion harmonizes with the legislative intent behind California's rest break laws, which intend to protect the health and welfare of employees and provide employees with remedies when employers fail to provide and pay for rest breaks. See Brinker Rest. Corp. v. Superior Court, 53 Cal.4th 1004, 1027 (2012); United Parcel Serv., Inc. v. Superior Court, 121 Cal. Rptr. 3d 765, 768 (Ct. App. 2011). By making employers liable for not paying for provided rest breaks to piece-rate employees, the foregoing law incentivizes employers to pay for rest breaks, which in turn incentivizes employees to take rest breaks for their health and welfare, as opposed to working through the rest breaks. United Parcel Serv., Inc., 121 Cal. Rptr. 3d at 768.

Accordingly, pursuant to this order, the Court modifies its order on Plaintiffs' motion for class certification to now hold that an employer is liable for violating California's rest break laws when the employer provides a piece-rate agricultural employee with a mandated rest break but fails to pay the employee for the rest break — regardless of whether the employee voluntarily works through the rest break.

///

### C. Class certification under Rule 23(b)(3) is warranted for Plaintiff's rest break claim and derivative claims.

In light of the Court's new holding above, the Court concludes that Plaintiffs' rest break claim warrants class certification under Rule 23(b)(3) — but only insofar as the claim is premised on the theory that Defendant failed to pay its employees for rest breaks, as opposed to the theory that Defendant failed to provide its employees with rest breaks.[4]

The commonality requirement of Rule 23(a)(2) is satisfied for the rest break claim because a common question is whether Defendant had a universal practice of not paying the rest period subclass for mandated rest breaks. As shown above, it appears that Defendant had a universal practice of not paying the rest period subclass for mandated rest breaks, and this is because, in part, Defendant's payroll practices were the same for all members of the rest period subclass. Therefore, the issue of whether Defendant paid for mandated rest breaks is "susceptible to generalized, class-wide proof" — namely, proof of Defendant's universal payroll practices — which is indicative of a common question under Rule 23(a)(2). In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006). See also Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. __, 136 S. Ct. 1036, 1045 (2016) (citing Newberg on Class Actions § 4:50 (5th ed.)) (stating that a common question is one where "the same evidence will suffice for each member to make a prima facie showing").

The predominance requirement of Rule 23(b)(3) is satisfied for the rest break claim because the common question of whether Defendant had a universal practice of not paying the rest period subclass for mandated rest breaks predominates over individualized inquiries. Answering this common question does not require a "great deal of individualized proof," Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004), but instead can be answered by simply looking to Defendant's universal payroll practices, which can be objectively and quickly verified through Defendant's payroll records, amongst other methods. Further, this question goes to the heart of liability for the rest break claim.

---

[4] The Court previously ruled in its original certification order that class certification is not warranted for Plaintiffs' theory that Defendant failed to provide its employees with rest breaks. That ruling remains in place.

Accordingly, because Plaintiffs' rest break claim satisfies the commonality and predominance requirements of Rule 23(a)(2) and Rule 23(b)(3), the rest break claim warrants class certification under Rule 23(b)(3) for the rest period subclass.[5]

Because the rest break claim warrants class certification, Plaintiffs' derivative claims — namely, the wages upon termination claim, accurate itemized wage statement claim, MAWPA claim, and unfair business practices claim — also warrant class certification. These derivative claims warrant class certification under Rule 23(b)(3) because liability for these claims hinges on whether Defendant violated California's rest break laws.[6] By answering the common and predominating question of whether Defendant paid the rest period subclass for mandated rest breaks, the factfinder will also answer "in one stroke" an issue that is central to each these derivative claims. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Accordingly, pursuant to this order, the Court modifies its order on Plaintiffs' motion for class certification to now hold that Plaintiffs' rest break claim, wages upon termination claim, accurate itemized wage statement claim, MAWPA claim, and unfair business practices claim warrant class certification under Rule 23(b)(3) for the rest period subclass.

### D.  Conclusion.

To summarize, the Court modifies its order on Plaintiffs' motion for class certification to now hold that an employer is liable for violating California's rest break laws when the employer provides a piece-rate agricultural employee with a mandated rest break but fails to pay the employee for the rest break — regardless of whether the employee voluntarily works through the rest break. Additionally, the Court modifies its order on Plaintiffs' motion for class certification to now hold that Plaintiffs' rest break claim, wages upon termination claim, accurate itemized wage

///

---

[5] The Court analyzed the other requirements for class certification, such as the adequacy and typicality requirements, in the original certification order.

[6] The Court analyzed the elements of these derivative claims in the original certification order.

12

statement claim,[7] MAWPA claim, and unfair business practices claim warrant class certification under Rule 23(b)(3) for the rest period subclass.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED as follows:

1. The Court's original certification order (Doc. No. 114) is MODIFIED as discussed above.

2. Plaintiffs' certification motion (Doc. No. 108) is GRANTED, IN PART, as follows:

    a. Plaintiffs' rest break claim, wages upon termination claim, accurate itemized wage statement claim, MAWPA claim, and unfair business practices claim, as identified above, are CERTIFIED for class aggregation under Rule 23(b)(3). The subclass for these claims is defined as follows:

    > Piece Rate Rest Period Subclass: All individuals who have been employed, or are currently employed, by Defendant as a non-exempt "field worker" or agricultural worker, who worked on a piece rate basis at any time from September 30, 2011 up to the present and were not separately compensated for rest periods during their piece rate shifts.

3. The parties must promptly MEET AND CONFER about the submission of a joint stipulated class notice and distribution plan. Within twenty-one days of this order, the parties must FILE either a stipulated class notice and distribution plan or a notice that no stipulation can be agreed to. If the parties cannot agree to a class notice or distribution plan, then Plaintiffs must FILE a proposed class notice and distribution plan within thirty-five days of this order, and Defendant shall have fourteen days following Plaintiffs' filing to file any objections, and Plaintiffs shall have seven days following Defendant's filing to FILE a reply.

---

[7] The wage statement claim is certified for class treatment for the rest period subclass insofar as the claim is premised on the theory that the wage statements failed to include accurate wage entries on account of Defendant not paying for rest breaks. As for the other theory underlying the wage statement claim — namely, that the wage statements failed to include, for example, the address information of Defendant and the address information of the grower / farm that secured the services of the employer, as described in more detail in the original certification order — the original certification order's certification of that theory for the overarching class still stands. See Doc. No. 114.

4. This case is REFERRED BACK to the assigned magistrate judge for further scheduling and other proceedings consistent with this order.

IT IS SO ORDERED.

Dated: __April 20, 2020__            _____
                                             SENIOR DISTRICT JUDGE