STAN S. MALLISON (Bar No. 184191)
Stanm@TheMMLawFirm.com
HECTOR R. MARTINEZ (Bar No. 206336)
Hectorm@TheMMLawFirm.com
CAROLINE L. HILL (Bar. No. 349176)
CHill@TheMMLawFirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California 94612-3547
Telephone: (510) 832-9999
Facsimile: (510) 832-1101

MARIO MARTINEZ (Bar No. 200721)
EDGAR I. AGUILASOCHO (Bar No. 285567)
MARTINEZ, AGUILASOCHO, & LYNCH
P.O. Box 1998
Bakersfield, California 93303
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISOL GOMEZ, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>        vs.<br><br>J. JACOBO FARM LABOR CONTRACTOR, INC, and Does 1 through 20, inclusive,<br><br>    Defendants. | Case No.: 1:15-cv-01489-JLT-BAM<br><br>**CLASS ACTION**<br><br>**SUPPLEMENTAL BRIEFING IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>*Before the Honorable Jennifer L. Thurston*<br><br>Complaint Filed: September 30, 2015 |

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................. 1

II.  STATEMENT OF FACTS ................................................................... 4

    A.   SUMMARY OF THE LITIGATION ......................................................... 4
    B.   SETTLEMENT NEGOTIATIONS ........................................................... 4

III. SUMMARY OF SETTLEMENT TERMS ......................................... 5

    A.   THE MAXIMUM SETTLEMENT CONSIDERATION ................................. 5
    B.   CLASS NOTICE ................................................................................. 8
    C.   TAX CONSEQUENCES OF SETTLEMENT PAYMENTS ........................... 8
    D.   PAYMENT OF SETTLEMENT SHARES ................................................. 9
    E.   DISTRIBUTION OF UN-CASHED CHECKS ............................................ 9
    F.   SCOPE OF CLASS RELEASE ............................................................ 10
    G.   SETTLEMENT ADMINISTRATION ..................................................... 10
    H.   PAYMENT TO PLAINTIFF, CLASS COUNSEL ATTORNEYS' FEES PAYMENT, AND CLASS COUNSEL'S COSTS PAYMENT ............................................................... 10

IV.  THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED .... 11

    A.   CLASS REPRESENTATIVE AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS. ....................................................................................... 12
    B.   THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH. ............... 14
    C.   THE PROPOSAL FOR THE CLASS IS ADEQUATE. .............................. 14
    1.   THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL IS ADEQUATE. ............... 15
    2.   THE EFFECTIVENESS OF DISTRIBUTION AND PROCESSING OF CLAIMS IS ADEQUATE. ........ 16
    3.   THE ATTORNEY'S FEES REQUESTED ARE ADEQUATE. ...................... 16
    4.   DISCLOSURE OF AGREEMENTS UNDER RULE 23(E)(3). ................... 16
    D.   THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER. ....... 17

V.   CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE ............................................................................... 18

    A.   THE NUMEROSITY REQUIREMENT IS MET. ..................................... 19
    B.   THE COMMONALITY REQUIREMENT IS MET. .................................. 19
    C.   THE TYPICALITY REQUIREMENT IS MET ........................................ 19
    D.   THE ADEQUACY OF REPRESENTATION REQUIREMENT IS MET ......... 19
    E.   CLASS CERTIFICATION IS PROPER UNDER RULE 23(B)(3) .............. 20

VI.  CONCLUSION .................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>C</u>ASES

3

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) --------------------------------------------------11, 12, 18
*Cellphone Termination Fee Cases*,
  186 Cal.App.4th 1380 (2010) ----------------------------------------------------------15
*Churchill Village, LLC v. General* Electric,
  361 F.3d 566 (2004)----------------------------------------------------------------------17
*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) --------------------------------------------------------11
*Consumer Priv. Cases*,
  175 Cal.App.4th 545 (2009)------------------------------------------------------------15
*Fry v. Hayt, Hayt & Landau*,
  198 F.R.D. 461 (E.D. PA. 2000)------------------------------------------------- 18, 19
*Gay v. Waiters' & Dairy Lunchmen's Union*,
  489 F. Supp. 282 (N.D. Cal. 1980) --------------------------------------------------18
*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ------------------------------------------------11, 17, 19
*Kullar v. Foot Locker Retail, Inc.*,
  168 Cal.App.4th 116 (2008)------------------------------------------------------------14
*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ----------------------------------------------------------11

### <u>S</u>TATUTES

Fed. R. Civ. P. 23 --------------------------------------------------------------------- passim

### <u>T</u>REATISES

4 *Newberg on Class Actions* 4th § 11.41 (2002) --------------------------------------10
Manual for Complex Litigation, Third § 30.41 (Fed. Judicial Center 1995) ------------------------11
*Newberg* § 11.22 ----------------------------------------------------------------------11

-ii-

## I.      INTRODUCTION

Plaintiff Marisol Gomez ("Plaintiff") seeks preliminary approval of this $100,000 class action settlement on behalf of a class of approximately 4,202[1] agricultural workers ("Class Members") employed by defendant J. Jacobo Farm Labor Contractor, Inc., ("Defendant" and/or "Jacobo") (collectively referred to as the "Parties") employed by Defendants between September 30, 2011 to November 5, 2019. On November 16, 2023, the Parties executed a Settlement Agreement, resolving all claims. *See* Exhibit 1 to the Declaration of Stan S. Mallison ("Mallison Decl"). Despite the multitude of damages and potential liability for Defendants, the primary impetus of the proposed settlement agreement stems from Defendant's limited financial resources. Mallison Decl. ¶ 17. Defendants, a farm labor contractor corporation, have ceased doing business, have no physical assets, and produced documents showing around $100,000 in total assets to Plaintiff. *Id.* Rather than waste the remaining assets of Defendants in further litigation and bankruptcy proceedings, the Parties arrived at the proposed Settlement. *Id.*

On January 19, 2024 Plaintiff filed her Motion for Preliminary Approval ("Motion"). *See* ECF 190. On August 19, 2024, this Court requested Supplemental Briefing from Plaintiff on three issues. *See* ECF 199. Thus, Plaintiff files this Supplemental Briefing to (1) address each of the factors identified in Federal Rule of Civil Procedure 23(e)(2); and (2) inform the Court that the Parties have stipulated to removal of the provision of the Settlement Agreement providing "No payments shall be made to Participating Class Members who receive a payment in the amount of $5.00 or less to conserve resources and promote efficiency of distribution." *See* Section III.E.3 to Exhibit 1 to the Mallison Declaration. Therefore, the Court's request for Plaintiff to address "whether the proposed settlement is fair and adequate for class members who will not receive any payment yet must release their claims against Defendant under the terms of the Settlement" is moot, as all Participating Class Members will now receive a distribution of the settlement, regardless of amount. *See* ECF 199, at 4. Plaintiff also (3) provides a Separate

---

[1] Plaintiff's Motion provides an estimate of 3,279 class members. *See* ECF 190. After subsequent discussions with Counsel for J. Jacobo, Plaintiff provides a new estimate of 4,202 class members to the Court and to the Settlement Administrator. *See* **Exhibit 3** to Declaration of Stan S. Mallison, Updated Phoenix Bid. *See also* **Exhibit 4**, Written Exchange With Defense Counsel.

1    Statement "identifying any agreement made in connection with the proposal" under Rule
2    23(e)(3). *See* ECF 199, at 3; Exhibit 4 to the Declaration of Stan S. Mallison.

3         The Gross Settlement Amount is $100,000 and covers the following: all Settlement
4    Shares to be paid to Class Members who do not submit a valid and timely Election Not to
5    Participate in Settlement ("Participating Class Members"); reasonable fees of the Settlement
6    Administrator (now estimated not to exceed $25,000)[2] Class Representative Payment of up to
7    $5,000 to the Class Representative; and Class Counsel's attorneys' fees of up to one-third (1/3)
8    of the Gross Settlement Amount, plus reasonable costs. Considering the modest recovery for
9    Class Members, Class Counsel will take a reduced Class Counsel fee of 25% of the Gross
10   Settlement Amount. Mallison Decl. ¶¶ 20-23. After deduction of the foregoing sums from the
11   Gross Settlement Amount, the entire Net Settlement Amount will be distributed to Participating
12   Class Members, and no Settlement funds shall revert to Defendant. Any residual funds resulting
13   from undeliverable or uncashed settlement checks will be disbursed to a suitable *cy pres*
14   beneficiary, subject to court approval. *See* Mallison Decl. ¶ 23.

15        As discussed in Plaintiff's Motion, the primary basis for the Settlement is financial
16   constraint of the Defendant. Mallison Decl. ¶¶ 16-17. Financial condition information was
17   produced from the Defendant demonstrating its financial state. Mallison Decl. ¶ 17. Defendant
18   also is no longer conducting business. *Id.* Based on the foregoing and their own independent
19   investigation and evaluation, Class Counsel and the Class Representative are of the opinion that
20   the Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of
21   all known facts and circumstances, including the risk of significant delay, defenses asserted by
22
23
24   _____
     [2] Plaintiff's Motion provided an estimate of $10,000 from the Settlement Administrator. *See* ECF 190-5.
25   That estimate was based upon an assumption of around 2,000 individuals receiving a distribution, due to
     the limitation that no Participating Class Member who would receive a payment of less than $5.00 would
26   receive a payment. *See* ECF 190-5, at 2 ("Total Claims Processed: 2,096") However, Plaintiff now
     includes an estimate that removes this exclusion. *See* **Exhibit 3** to the Declaration of Stan S. Mallison.
27   Plaintiff also removed this exclusion from the Class Notice. *See* **Exhibit 2** to the Declaration of Stan S.
     Mallison. Plaintiff also updated the estimated number of Class Members after receiving updated
28   information from Defense Counsel after the Court's Order Requesting Supplemental Briefing. Mallison
     Decl. ¶ 21, fn. 2. *See* **Exhibit 4** to the Declaration of Stan S. Mallison.

Jacobo, or that Class Counsel anticipates could be raised by Jacobo, and potential appellate issues. Mallison Decl. ¶ 29.

The Settlement represents informed, closely negotiated compromises on both sides. Mallison Decl. ¶ 33. The Settlement was reached after a production by Defendant of some of the relevant data necessary to evaluate this settlement, upon which Plaintiff's expert performed detailed analysis and damages calculations. Mallison Decl. ¶¶ 13-15. The parties thus approached negotiations with a clear view of the facts and potential value of the case.

In light of the aforementioned financial reality of Defendants, Counsel believes the Settlement is reasonable, fair, and adequate, as it provides compensation to class members in proportion to the relative value of their claims. Mallison Decl. ¶ 19. Of course, the Settlement is a compromise figure, taking into account the risk associated with further litigation both in determining the fairness of total Settlement as well as the propriety of other terms. *Id.* Plaintiff's counsel balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members thereby, against the probable outcome of a wide range of issues at trial. *Id.*

In addition to the financial realties of Defendants, Counsel for Plaintiff carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, new legal decisions affecting pivotal issues in the case, and other various possible risks and delays. Mallison Decl. ¶¶ 19; 29-30. Indeed, no matter how good the facts and law, every trial retains inherent risk. Mallison Decl. ¶¶ 19; 29-30. The Settlement, however, provides a certainty of recovery for Class Members. Additionally, further litigation or trial of the matter would substantially delay any compensation to Class Members and/or potentially imperil the financial stability of Defendants, and their ability to provide any remedies in this action. Mallison Decl. ¶¶ 19; 29-30.

As discussed below, the Settlement satisfies the criteria for preliminary settlement approval under federal law and falls well within the range of proper approval. Accordingly, Plaintiff presents this memorandum in support of the Motion for Preliminary Approval of the

-3-

Settlement, conditionally certifying the settlement class, approving and directing distribution of the Class Notice and related materials to the Class, appointing the Class Representative, Class Counsel, and Settlement Administrator, and setting a final approval schedule.

## II.   STATEMENT OF FACTS

### a.   Summary of the Litigation

The operative complaint is the First Amended Complaint filed on August 28, 2018 ("FAC"). Mallison Decl. ¶ 11. The operative FAC alleges ten separate causes of action against Defendant for: (1) violation of the Agricultural Workers Protection Act, (2) failure to pay minimum wage; (3) failure to pay overtime; (4) rest period violations; (5) meal period violations; (6) failure to maintain accurate wage statements; (7) failure to timely pay wages due at termination; (8) violations of Business & Professions Code § 17200 et seq. The Parties previously agreed to dismiss PAGA Representative claims and the Parties previously executed and filed a Stipulation re same on February 17, 2023 (Doc. No. 159).

Prior to commencing the action, Class Counsel conducted extensive due diligence, including interviewing Plaintiff in detail regarding her working conditions and Defendants' wage payment practices, and factual research on Defendants based on publicly available information. Following these investigative efforts, Class Counsel determined that the case was suitable for class treatment and that Plaintiff would be an adequate class representative. Mallison Decl. ¶ 12. After commencing the action, Plaintiff conducted significant amounts of written discovery, and Defendants produced documents, including payroll and timekeeping records for Class Members during the Class Period. Class Counsel engaged their expert to perform an extensive review and analysis of these records and assembled a comprehensive damages model to present to Defendants at mediation. Mallison Decl. ¶ 13.  In a nutshell, the investigation and discovery conducted herein was thorough and elaborate, putting the parties in an excellent position to assess the strengths and weaknesses of the case, as well as its value. *Id.*

### b.   Settlement Negotiations

In connection with the aforementioned discovery efforts, the parties participated in a mediation with mediator Hon. Donald Black and on August 29, 2023 accepted his mediator's

proposal to resolve the Lawsuit. Mallison Decl. ¶ 16. This Agreement replaces any other agreements, understandings, or representations between the parties, and is fully admissible to prove the terms and conditions of the Settlement. *Id.* The data points, discovery, and financial constraint issues presented during mediation and articulated in the mediator's proposal allowed the parties to intelligently evaluate both the risks of further litigation and prospects of prevailing on the merits. Mallison Decl. ¶ 16.

Despite the multitude of damages and potential liability for Defendants, the primary impetus of the proposed settlement agreement stems from Defendants' limited financial resources. Mallison Decl. ¶ 17. Defendants, a farm labor contractor corporation, have ceased doing business, have no physical assets, and produced documents showing around $100,000 in total assets to Plaintiff. *Id.* There are no named individual Defendants. Rather than waste the remaining assets of Defendants in further litigation and bankruptcy proceedings, the Parties arrived at the proposed Settlement. *Id.*

Therefore, the instant Settlement represents a fair and reasonable compromise of those competing factors. Mallison Decl. ¶ 19.

## III.    SUMMARY OF SETTLEMENT TERMS

### a.  The Maximum Settlement Consideration

Under the Settlement, Defendants are obligated to pay the Gross Settlement Amount of $100,000. Mallison Decl, Exhibit 1, Section III.A.1 Defendants shall pay the entire Gross Settlement Amount in two equal installments. Mallison Decl, Exhibit 1, Section III.B. Subject to the terms of this Agreement, Defendants shall pay the first installment ($50,000) into the Qualified Settlement Fund ("QSF") created by the Settlement Administrator within the later of 15 days of preliminary approval or December 31, 2023, whichever is later. *Id.* The second installment ($50,000) shall be made within 15 days of final approval or May 15, 2024, whichever is later. *Id.*

All of the Gross Settlement Amount will be disbursed pursuant to the Settlement Agreement, and none of it will revert to Jacobo. Mallison Decl, Exhibit 1, Section III.A. Any late payments will incur interest at the statutory rate for a judgment for wages under California Labor

1    law. Mallison Decl, Exhibit 1, Section III.A. The Gross Settlement Amount shall be paid into a

2    Qualified Settlement Fund ("QSF") created by the Settlement Administrator as set forth below in

3    Section III.B. *Id.* The Settlement Administrator shall handle such monies pursuant to the terms of

4    the Settlement. *Id.*

5           The Gross Settlement Amount is the maximum total amount that Jacobo is obligated to

6    pay for any and all purposes under this Agreement, except that Jacobo will be required to pay its

7    share of any payroll taxes in addition the Gross Settlement Amount. Mallison Decl, Exhibit 1,

8    Section III.A.1. If Jacobo does not pay into the QSF as provided above, Class Counsel and

9    Defense Counsel agree to meet and confer in an attempt to secure prompt payment and to

10   preserve the intent of this Agreement. Mallison Decl, Exhibit 1, Section III.A.2. Any late

11   payment(s) will incur interest at the statutory rate for a judgment for wages under California

12   Labor law, which will be included in the Gross Settlement Amount. Mallison Decl, Exhibit 1,

13   Section III.A.2.

14          In addition to the amounts determined to be due to Plaintiff as Participating Class

15   Members under this Settlement Agreement, the Class Representative/Plaintiff will apply to the

16   Court for the Class Representative Payment of up to $5,000, to be paid out of the Gross

17   Settlement Amount promptly upon receipt by the Settlement Administrator. Mallison Decl,

18   Exhibit 1, Section III.C.1. Jacobo will not oppose a request for the Class Representative

19   Payments for Plaintiff. *Id.* The Settlement Administrator will pay the Class Representative

20   Payments approved by the Court out of the Gross Settlement Amount. *Id.*

21          In consideration for settling this matter, Jacobo has agreed to not oppose Class Counsel's

22   application to the Court for an award of 1/3 of the Gross Settlement Amount as their Class

23   Counsel Fees Payment, plus an additional amount for reasonable costs. Mallison Decl, Exhibit 1,

24   Section III.C.2. However, Class Counsel has agreed to reduce their Class Counsel Fees Payment

25   to 25% (twenty-five percent) of the Gross Settlement Amount, considering the modest recovery

26   for Class Members. Mallison Decl., ¶ 21. The ultimate amount of any award for Class Counsel

27   Fees Payment and Class Counsel Litigation Expenses Payment is to be determined by the Court.

28   Mallison Decl, Exhibit 1, Section III.C.2. Class Counsel will submit an application for fees,

costs, and expenses to the Court for approval prior to the date of the hearing for final approval of the Settlement. *Id.* The Settlement Administrator will pay the amount approved by the Court out of the Gross Settlement Amount promptly upon receipt by the Settlement Administrator. *Id.* If the Court approves a Class Counsel Fees Payment of less than 25% of the Gross Settlement Amount or approves an amount less than the reasonable costs and expenses (Class Counsel Litigation Expenses Payment) requested from the Court, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members. *Id.* Payroll tax withholding and deductions will not be taken from the Class Counsel Fees and Expenses Payment and instead one or more Forms 1099 will be issued by the Settlement Administrator to Class Counsel with respect to those payments. *Id.*

The "Net Settlement Amount" will be distributed to all Participating Class Members on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of pay periods worked by each Class Member between September 30, 2011 to November 5, 2019 (the "Class Period"). Mallison Decl., Exhibit 1, Section III.E.1. The resulting quotient thereof shall be the "Pay Period Value." *Id.* The settlement payments will be reduced by any required legal deductions (including taxes and withholdings) for each Participating Class Member. Mallison Decl., Exhibit 1, Section III.E.2. The payments to the Settlement Class are to be distributed from the Net Settlement Amount on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of pay periods worked by each class member during the Class Period. *Id.*

The estimated Net Settlement Amount is illustrated with the following table:

| Gross Settlement Amount | $100,000 |
|---|---|
| Attorneys' Fees | -    $25,000 |
| Litigation Costs | -    $35,266 |
| Enhancement Awards | -    $5,000 |
| Settlement Administration | -    $25,000 |
| Net Settlement Amount | =  **$9,734** |

Class Counsel's evaluation of potential recovery on the unpaid wage and break violation claims is in line with the $100,000 settlement figure, account for the reality of Defendants' limited assets. *See* Mallison Decl. ¶¶ 16-17; 19; 24. In any case, continued litigation would clearly delay payment—if any—to the Class, and instead likely liquidate the limited amount of Defendants' financial resources. *Id.* Given these circumstances, the settlement is a fair, adequate an reasonable recovery for this class of low-wage agricultural workers. *Id.*

### b. Class Notice

The proposed Class Notice Packet will be provided to every Class Member who can be located.[3] Mallison Decl., Exhibit 1, Section III.F.2. The Class Notice Packet will reflect the Court's Order granting Preliminary Approval of the Settlement and each Class Member's estimated Settlement Share based on his or her Class Data. *Id.*

The Class Members will have forty-five (45) calendar days after the date on which the Class Notice Packets are mailed to complete and submit an Election Not to Participate in Settlement Form. Mallison Decl., Exhibit 1, Section III.F.2.c. *See* Section III.F.2.c-d of Exhibit 1 for all procedures provided for objections and elections not to participate in the settlement.

### c. Tax Consequences of Settlement Payments

All Settlement Shares will be allocated as follows: 10% to settlement of wage claims, 45% to settlement of claims for interest, and 45% to settlement of claims for penalties. Mallison Decl., Exhibit 1, Section III.E.4. The portion allocated to wages shall be subject to all applicable withholdings and reported on an IRS Form W-2 and the portion allocated to interest and penalties shall be reported on an IRS Form 1099 by the Settlement Administrator. *Id.* After appropriate tax withholding from each Participating Class Member's Settlement Share, the net payment to be received by each Participating Class Member as required by law via a W-2 Form, the Settlement Administrator shall immediately pay all such withheld funds to the appropriate

---

[3] Plaintiff removed language providing for the exclusion of distribution for Participating Class Members who receive $5.00 in the Settlement Agreement. *See* **Exhibit 2** to Declaration of Stan S. Mallison. Plaintiff also changed the estimated amount for Settlement Administration. Mallison Decl., ¶ 27, fn 3. Otherwise, the Class Notice is identical to the Class Notice included in Plaintiff's Motion for Preliminary Approval. *Id.*

state and federal taxing authorities. *Id.* The Settlement Administrator shall provide each Participating Class Member with appropriate documentation setting forth the amount of any tax or other deductions in accordance with state and federal tax requirements. *Id.*

Each Party and Participating Class Member will be responsible for their own tax obligations. Mallison Decl., Exhibit 1, Section III.D. The Parties agree and understand that Jacobo has not made any representations regarding the tax obligations or consequences, if any, related to this Settlement. *Id.* The Parties agree that each Participating Class Member is solely responsible for determining the tax consequences of payments made pursuant to this Settlement and for paying taxes, if any, which are determined to be owed by each of them or on such payments (including penalties and interest related thereto) by any taxing authority, whether state, local, or federal. *Id.*

### d.  Payment of Settlement Shares

Each Class Member's Settlement Share will be determined by multiplying the Pay Period Value by the number of pay periods worked by the Class Member. Mallison Decl., Exhibit 1, Section III.E.1. The pro rata distribution for a Participating Class Member who worked during multiple Class Periods in California is not exclusive and will be calculated as separate pay period distributions according to the claims applicable to the relevant Class Period to be added together. *Id.*

Class Counsel has reviewed the proposed method of distribution and has determined that, on the whole, it serves the purpose of providing a relatively simple and readily determinable method for distribution, while also allowing for a distribution that reasonably corresponds to the alleged damages and likely recoveries, which are based upon various theories of liability. Mallison Decl. ¶ 25.

### e.  Distribution of Un-Cashed Checks

The Settlement Administrator will provide notice to Class Counsel and Defense Counsel of any settlement checks returned as undeliverable and any settlement checks remaining un-cashed for more than 180 calendar days after issuance. Mallison Decl., Exhibit 1, Section III.F.4. In the event any Class Member cannot be located within 180 days of the expiration of the initial

-9-

1   settlement checks, funds represented by uncashed settlement check(s) will be distributed to a
2   proposed cy pres recipient. *Id.* At final approval, Plaintiff will propose Legal Aid at Work. *See*
3   Mallison Decl. ¶ 23.

4             **f.  Scope of Class Release**

5           The Participating Class Members' Released Claims are wage/hour claims that were or
6   could have been brought based on the allegations in the Lawsuit. Mallison Decl., Exhibit 1,
7   Section IV.A. The Parties intend that this Settlement Agreement, including the Released Claims
8   set forth in this Agreement, shall be binding on all Class Members who do not timely submit a
9   valid Election Not to Participate in Settlement. *Id.* This Settlement Agreement shall constitute,
10  and may be pleaded as, a complete and total defense to any Released Claims if raised in the
11  future. *Id.* Notably, the Class Release does <u>not</u> contain a Civil Code § 1542 waiver. *Id.*

12            **g.  Settlement Administration**

13          Class Counsel asks the Court to appoint Phoenix as the Settlement Administrator, which,
14  as a condition of appointment, will agree to be bound by the Settlement with respect to the
15  performance of its duties and its compensation. *See* Mallison Decl, Exhibit 1, Section III.G.
16  Phoenix has agreed to administer this Settlement for a capped fee of $25,000. *See* Mallison Decl.
17  Exhibit 3, Phoenix Settlement Administration.

18            **h.  Payment to Plaintiff, Class Counsel Attorneys' Fees Payment, and Class**
19                **Counsel's Costs Payment**

20          As part of Plaintiff's Motion for Final Approval, Class Counsel will seek an award of up
21  to $5,000 to Plaintiff as compensation for her service as Class Representative and the risks she
22  faced and continues to face in having her name attached to this federal class action lawsuit. *See*
23  Mallison Decl., Exhibit 1, Section III.C.1. Class Counsel will also seek an award of attorneys'
24  fees for a reduced 25% of the Gross Settlement Amount, plus reasonable costs, which Plaintiff's
25  counsel estimates to be no more than $35,266. *See* Mallison Decl. ¶¶ 21;37-38; Exhibit 1,
26  III.C.2.

27

28

## IV. THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 *Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A class action, however, may not be dismissed, compromised, or settled without the approval of the court. Fed. R. Civ. P. 23(e). Judicial proceedings under Rule 23 of the Federal Rules of Civil Procedure have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation, Third (Fed. Judicial Center 1995) ("Manual") § 30.41. The Manual's settlement approval procedure describes three distinct steps:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to all affected Class Members; and

3. A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.* at § 30.41. The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg* § 11.22 et seq.

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

"Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable and adequate.'" *Briseno v. Henderson,* 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). Rule 23(e)(2) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the proposal for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2); *see also Briseno,* 998 F.3d 1023-24. In *Briseno,* the Ninth Circuit determined the revision to Rule 23(e) requires courts "to go beyond [its] precedent." *Briseno,* 998 F.3d at 1026. Thus, Plaintiff will address below whether the settlement is "fair, reasonable, and adequate" under federal law. The Settlement proposed by the parties meets this test.

### A.      Class Representative And Class Counsel Have Adequately Represented The Class.

Marisol Gomez, acting as Class Representative has adequately represented the Class. Mallison Decl. ¶¶ 10; 31-32. There is no evidence of antagonism or conflict of interest between Plaintiff (or their counsel) and the remaining Class Members. Mallison Decl. ¶ 32. Plaintiff has fulfilled her role as Class Representative with vigor, providing Class Counsel with information, documents, insights, opinions, and necessary decisions to make this case successful. Mallison Decl. ¶¶ 31-32.

Class Counsel has also adequately represented the Class. Class Counsel's analysis of the case, damages, potential recovery, and potential pitfalls at trial shows the Settlement to be well within the ballpark of reasonableness. Mallison Decl. ¶¶ 28-29. Class Counsel's damages

-12-

assessment and damage model was prepared based on a statistical analysis of Class Members' pay and timekeeping records. Mallison Decl. ¶¶ 13-15. This analysis was performed in advance of mediation for the purpose of showing Defendant the "worst case scenario" should the Class prevail on all its claims at trial. *Id.* Thus, it is admittedly a "pie-in-the-sky" number that relies on liberal assumptions and fails to consider the numerous pitfalls of litigation, such as prevailing on the merits and collecting on any judgment from Defendants with such limited financial means. *Id.*

Nonetheless, Plaintiff estimates the damages for piece-rate work completed by Class Members over 14,181 piece rate shifts without paid rest periods to be $181,337 in unpaid wages, plus interest. Mallison Decl. ¶ 15. Plaintiff estimates damages in the amount of $124,324 for failure to pay Class Members minimum wage. *Id.* Plaintiff estimates the damages for inaccurate wage statement violations by Defendants to be $605,200, and damages for failure to pay all wages owed at termination to be $3,576,097 (based on 30 days wages times average number of hours work times actual wage rates at termination). *Id.* The sum of these damages amounts to $4,486,958. *Id.*

However, Plaintiff's ability to realistically recover from Defendants beyond the proposed settlement amount is unlikely. First, Plaintiffs only sued the corporation of J. Jacobo Farm Labor Contractor, which has ceased to do any business and holds no physical assets, according to California Business Portal. Mallison Decl. ¶ 17. Second, Defendants produced financial documents to Plaintiff indicating assets in the amount of $100,000. *Id.* Rather than risk trial, potential stagnation in the bankruptcy courts, and the prospect of liquidating Defendants' remaining assets in further litigation, Plaintiffs very reluctantly came to the proposed settlement amount of $100,000. *Id.*

As such, the Settlement with Defendant for the consideration and on the terms set forth therein is fair, adequate, and reasonable, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay. Mallison Decl. ¶ 19. The Settlement is also in the best interest of judicial efficiency in this case, as it would obviously eliminate an old case involving lengthy and intense litigation from this

1  court's calendar, and likely prevent further proceedings in bankruptcy. *Id.*

2          **B.**        **The Settlement Was Negotiated At Arm's Length.**

3          The Settlement was reached after informed, arm's length negotiations between the parties

4  through Mediation. Mallison Decl. ¶¶ 16; 33. Class Counsel conducted thorough investigation

5  and discovery allowing a realistic assessment of the strengths, weaknesses, and value of the case.

6  Mallison Decl. ¶¶ 13-15. In sum, the Settlement is the product of non-collusive negotiations. *Id*.

7          Firstly, the conducted held arms-length negotiations with the assistance of well-known

8  and respected mediator Donald Black, who provided a Mediator's Proposal accepted by the

9  Parties. *See Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116, 129 (2008) ("The court

10  undoubtedly should give considerable weight to […] the involvement of a neutral mediator in

11  assuring itself that a settlement agreement represents an arm's length transaction entered without

12  self-dealing or other potential misconduct.")).

13          Secondly, the parties had engaged in extensive discovery, with Defendants having

14  produced time and payroll data to facilitate settlement negotiations. Mallison Decl. ¶¶ 13-15.

15  Additionally, Plaintiff was aware that, even if she stood to prevail on wage and break violation

16  claims, they faced legal obstacles in obtaining other damages and penalties derivative thereof.

17  Mallison Decl. ¶¶ 16-17; 29-30. This primarily stems from the limited resources of Jacobo and

18  the goal to provide Participating Class Members with Settlement Shares rather than risk the

19  potential of withering away the last remaining resources of Jacobo in further litigation. *Id.*

20          Lastly, Counsel's extensive experience in similar litigation, specifically wage and hour

21  class action litigation and settlement are outlined in the Declaration of Stan Mallison. Mallison

22  Decl. ¶¶ 3-10; 28-34.

23          **C.**        **The Proposal For The Class Is Adequate.**

24          The Settlement, which will affect 4,202 employees, provides for a Gross Settlement

25  Amount of $100,000 to resolve this case, amounting to some net recovery for each Participating

26  Class Member. *See* Mallison Decl., Exhibit 1, III.Q. While this settlement amount does not

27  reflect the estimated damages of all of Defendants' alleged violations, this result does offer low-

28  wage agricultural workers compensation for Defendants' violations without continuing to chip

away at the little that remains of Defendants' financial assets with further litigation. Mallison Decl. ¶¶ 16-17;19;24;30. The $100,000 Settlement is reasonable recovery in light of Defendants' limited financial assets. *Id.* The Settlement seeks to distribute the remaining financial assets of Defendants to Participating Class Members without the risk of continued litigation and depletion of Defendants' remaining resources. *Id.*

There will be no reversion of any money to Defendants, and any residual funds resulting from uncashed settlement checks will be remitted to a court-approved cy pres beneficiary. Mallison Decl ¶¶ 20; 22-23.The monies to be awarded to Class Counsel and the Class Representative are also fair and appropriate under the circumstances. *See Consumer Priv. Cases*, 175 Cal.App.4th 545, 558 (2009) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery.") (internal quotations omitted); *Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380, 1393–95 (2010) (finding no abuse of discretion in award of $10,000 to each of four named plaintiffs).

### 1. The Costs, Risks, and Delay of Trial and Appeal Is Adequate.

Class Counsel's evaluation of potential recovery on the unpaid wage and break violation claims is in line with the $100,000 settlement figure, account for the reality of Defendants' limited assets. *See* Mallison Decl. ¶¶ 16-17;19;24;30. In any case, continued litigation would clearly delay payment—if any—to the Class, and instead likely liquidate the limited amount of Defendants' financial resources. *Id.* Plaintiff's counsel conducted a thorough investigation into the facts of this case, diligently pursued an investigation of Class Members' claims against Defendants and engaged an expert to calculate damages. Mallison Decl. ¶¶ 13-15; 28-29. For its part, Defendant contested liability in this action, is represented by zealous counsel, and was prepared to vigorously defend against these claims if the action had not settled. Mallison Decl. ¶ 29.

As such, the Settlement with Defendants for the consideration and on the terms set forth therein is fair, adequate, and reasonable and is in the best interest of the Class in light of all known facts and circumstances, including the risk of the significant delay or no recovery whatsoever.

### 2. The Effectiveness of Distribution And Processing Of Claims Is Adequate.

The effectiveness of distribution and processing of claims is adequate, considering the estimated number of class members and the modest recovery.

The "Net Settlement Amount" will be distributed to all Participating Class Members on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of pay periods worked by each Class Member between September 30, 2011 to November 5, 2019 (the "Class Period"). *See* Mallison Decl. ¶¶ 22-23. The resulting quotient thereof shall be the "Pay Period Value." *Id.*

Each Class Member's Settlement Share will be determined by multiplying the Pay Period Value by the number of pay periods worked by the Class Member. *See* Mallison Decl. ¶¶ 22-23. The pro rata distribution for a Participating Class Member who worked during multiple Class Periods in California is not exclusive and will be calculated as separate pay period distributions according to the claims applicable to the relevant Class Period to be added together. *Id.*

### 3. The Attorney's Fees Requested Are Adequate.

Although the fee awards will be scrutinized at the final approval hearing, Class Counsel has expended significant time and resources in prosecuting this action. *See* Mallison Decl. ¶¶ 12-18; 28-29; 35-38. Nevertheless, in light of the modest recovery for class members, Class Counsel has agreed to a reduced recovery. *See* Mallison Decl. ¶ 21, fn. 1.

### 4. Disclosure Of Agreements Under Rule 23(e)(3).

Class Counsel provides a Statement under Rule 23(e)(3) identifying the Settlement Agreement made in connection with the proposal. See Declaration of Stan S. Mallison, Exhibit 4. Class Counsel also provides a copy of the written email exchange where Counsel for J. Jacobo stipulated to the removal of the provision of the Settlement Agreement excluding distribution of payments for class members who receive less than $5.00. See Mallison Decl ¶¶ 21; 43. Given the gross settlement amount and material terms remain unchanged, Counsel for J. Jacobo also stipulated that such a removal of Section III.E.3 did not amount to a material modification of the Settlement Agreement. See Mallison Decl ¶¶ 21; 43; Exhibit 4.

-16-

1

2

**D.** **The Proposal Treats Class Members Equitably Relative To Each Other.**

3    The proposed Settlement treats all Class Members equitably relative to each other. The

4  Settlement calculates recovery by Class Members by total number of pay periods and provides

5  for pro rata distribution among Participating Class Members. *See* Mallison Decl., Exhibit 1,

6  Section III.E.1.

7    The proposed Class Notice also explains the Settlement to each Class Member in an

8  equitable manner. *See Churchill Village, LLC v. General* Electric, 361 F.3d 566, 575 (2004)

9  (quoting *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (1980)) ("A class action settlement notice "is

10  satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

11  with adverse viewpoints to investigate and to come forward and be heard.") *See also Hanlon*,

12  150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement.")

13    Here, the proposed Class Notice is the best notice practicable. *See* Mallison Decl.,

14  Exhibit 2. All Class Members can be identified, and the Class Notice and the related materials

15  will be mailed directly to each Class Member. *Id.* The Class Notice adequately informs Class

16  Members of the nature of the litigation, the essential terms of the Settlement, how to object to the

17  Settlement, and how to elect not to participate in the Settlement. *See id.* Further, the Class Notice

18  identifies Class Counsel, specifies the amounts of the Class Representative Payment, each Class

19  Member's estimated Settlement Share, and informs Class Members that Class Counsel will seek

20  an award of one-third of the Gross Settlement Amount to reimburse Class Counsel's attorneys'

21  fees, and that Class Counsel seeks to recover up to $35,266 in costs. *Id*. The Class Notice also

22  explains how to obtain additional information regarding the action and the Settlement. *Id.*

23    Specifically, within five (5) calendar days after the Court grants preliminary approval of

24  the Settlement, Defendants shall provide the Settlement Administrator with the names, most

25  recent known mailing address and telephone number, Social Security Number and the respective

26  number of workweeks that each Class Member worked for Defendants in a Covered Position

27  during the Settlement Class Period in a readable Microsoft Office Excel spreadsheet (collectively

28  "Class List and Data"). *See* Mallison Decl., Exhibit 1, Section III.F.2.e. The Class Notice and

-17-

other materials will be mailed by the Settlement Administrator within 10 days following Defendant's delivery of the Class Members' data. *See* Mallison Decl., Exhibit 1, Section III.F.2.g. The Settlement Administrator will attempt to locate any Class Members whose Notices are returned as undeliverable. *See* Mallison Decl., Exhibit 1, Section III.F.2.f.  At least sixteen (16) Court days before the Final Approval Hearing, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members. Settlement *See* Mallison Decl., Exhibit 1, Section III.F.2.k. In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

Additionally, the scope of the release by all Participating Settlement Class Members (all Settlement Class Members other than those who elect not to participate in the Settlement) tracks the claims made in this case for all Class Members equitably. It covers all claims alleged in the operative complaint in the action, and any additional wage-and-hour claims that could have been brought based on the facts alleged therein, and is limited to the Settlement Class Period (i.e., it does *not* run through preliminary approval). *See* Mallison Decl., Exhibit 1, Section IV.A.

Therefore, under the factors provided in Rule 23(e)(2) and *Briseno v. Henderson,* 998 F.3d 1014, 1023 (9th Cir. 2021), this Settlement is "fair, reasonable, and adequate."

## V.     CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Fry v. Hayt, Hayt & Landau, 198 F.R.D. 461, 466 (E.D. PA. 2000) (citing Fed. R. Civ. P. 23(c)(1)). Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met. The Court has already certified a portion of the class, and by this motion the Plaintiffs seek conditional certification of a broader class for settlement purposes.

### a.  The Numerosity Requirement is Met

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). Here, the count of approximately 4,202 similarly situated Class Members satisfies the numerosity requirement. *See* Mallison Decl., Exhibit 1, Section I.D; Mallison Decl. ¶ 34.

### b.  The Commonality Requirement is Met

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019. Here, Plaintiff's claims involve common questions of both law and fact which exist regarding Defendants' alleged failure to provide properly paid rest breaks and itemized wage statements. Mallison Decl. ¶ 34.

### c.  The Typicality Requirement is Met

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry, supra*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Plaintiff's respective claims are essentially identical to all other non-exempt farm laborers employed by Defendants, as all Class Members were subject to the same practices of Defendants. Mallison Decl. ¶ 34.

### d.  The Adequacy of Representation Requirement is Met

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show that: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry, supra*, 198 F.R.D. at 469.

Here, there is no evidence of antagonism or conflict of interest between Plaintiff (or their counsel) and the remaining Class Members. Mallison Decl. ¶¶ 10; 12; 31-34; Plaintiff has

-19-

1  fulfilled her role as Class Representative with vigor, providing Class Counsel with information,

2  documents, insights, opinions, and necessary decisions to make this case successful. *Id.* The

3  Class Representative spent considerable time in her efforts on behalf of the class. *Id.* Lastly,

4  Class Counsel's extensive experience in similar litigation, specifically wage and hour class

5  action litigation and settlement are outlined in the Declaration of Stan Mallison. Mallison Decl.

6  ¶¶ 3-10; 33-38.

7          **e.  Class Certification is Proper Under Rule 23(b)(3)**

8          In addition to demonstrating the four prerequisites of Rule 23(a), class certification

9  requires a showing that certification is proper under one of the three requirements of Rule 23(b).

10  Here, the parties agree for purposes of the Settlement only that certification of the Class is

11  appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of

12  the class predominate over any questions affecting only individual members, and…a class action

13  is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ.

14  P. 23(b)(3).

15  **VI.    CONCLUSION**

16          For the reasons set forth above, Plaintiff respectfully requests that the Court grant this

17  motion and enter an order conditionally certifying the settlement class, approving and directing

18  distribution of the Class Notice and related materials to the Class, appointing the Class

19  Representative, Class Counsel, and Settlement Administrator, and setting a final approval

20  schedule.

21  Respectfully submitted,

22  Dated:  September 6, 2024                    **MALLISON & MARTINEZ**

23

24                                              By:_____

25                                                  Stan Mallison
                                                    Hector R. Martinez
26                                                  Caroline L. Hill
                                                    Attorneys for Plaintiffs

27

28

-20-

1    Dated:  September 6, 2024                    **MARTINEZ, AGUILASOCHO, & LYNCH**

2

3                                                  By: /s/ Mario Martinez

4                                                      Mario Martinez
                                                       Edgar Aguilasocho
                                                       Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Supplemental Briefing in support of Plaintiff's Motion for Preliminary Approval
Case No.: 1:15-cv-01489-JLT-BAM