1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  MARISOL GOMEZ, individually and on behalf of all others similarly situated, | )  Case No.: 1:15-cv-1489 JLT BAM |
| 12 | )  ORDER GRANTING PLAINTIFF'S MOTION |
|     Plaintiff, | )  FOR PRELIMINARY APPROVAL OF THE |
| 13 | )  CLASS SETTLEMENT AS MODIFIED BY |
|     v. | )  STIPULATIONS OF THE PARTIES |
| 14 | ) |
| J. JACOBO FARM LABOR | )  (Docs. 190, 195, 202, 203) |
| 15  CONTRACTOR, INC., | ) |
| 16 | ) |
|     Defendant. | ) |
| 17 | ) |

18         Marisol Gomez seeks to hold J. Jacobo Farm Labor Contractor, Inc., liable for violations of

19  California wage and hour laws and the federal Agricultural Workers Protection Act.  (*See generally*

20  Docs. 1, 95.)  Gomez now seeks preliminary approval of a class settlement reached in this action.

21  Specifically, Gomez seeks: (1) conditional certification of the settlement class; (2) preliminary

22  approval of the settlement; (3) appointment as the class representative; (4) appointment of the firms of

23  Mallison & Martinez and Martinez Aguilasocho Law, Inc. as class counsel; (5) approval of the class

24  notice; (6) appointment of Phoenix Settlement Administration as the settlement administrator; and (7)

25  scheduling for final approval.  (*See* Doc. 190-1 at 22; *see also* Doc. 200 at 6-7.)

26         The Court reviewed the proposed settlement, subsequent stipulations concerning modification

27  of the settlement terms, and supplemental briefs.  For the following reasons, the motion for

28  preliminary approval of the settlement is **GRANTED**.

## BACKGROUND

Marisol Gomez asserts she is a former employee of J. Jacobo Farm Labor Contractor, for whom she performed "agricultural work." (Doc. 95 at 4, ¶ 13.) Gomez reports she worked "at agreed-upon piece rates that varied over her period of employment," which ended in 2015. (*Id.*)

Gomez contends that with the piece-rate policy, she was not compensated "for all hours worked" within the meaning of California Wage Orders. (*Id.* at 7, ¶ 25 [quotation marks omitted].) She asserts Defendant also failed "to pay overtime premium wages for work performed in the fields." (*Id.*) Gomez alleges Defendant failed to provide proper meal and rest breaks, and had a "policy … to not pay the premium wages owed to workers for missed and untimely" meal and rest breaks. (*Id.* at 7-8, ¶¶ 26-27.) In addition, she contends that "Defendant[] had a policy of discouraging and preventing employees from taking rest breaks." (*Id.* at 8, ¶ 27.) Further, she alleges Defendant failed "to maintain accurate time-keeping records" and "willfully provide[d] inaccurate itemized wage statements that [did] not reflect all 'hours worked,' wages earned and applicable pay rates." (*Id.*, ¶ 28.)

On September 30, 2015, Gomez initiated this action by filing a complaint on behalf of herself and a class including all individuals who are, or have been, employed in California by J. Jacobo Farm Labor Contractor "within four (4) years of the filing of the Initial Complaint in this action." (Doc. 1 at 9, ¶ 35.) She sought to hold the defendants—at that time, J. Jacobo Farm Labor Contractor and Bedrosian Farms LLC—liable for violations of the Migrant and Seasonal Agricultural Worker Protection Act, the California Labor Code, and California Business and Professions Code § 17200 *et seq.*, and penalties under California's Private Attorney General Act.[1] (*Id.* at 6, ¶ 21; *see also id.* at 1.) After the Court granted Gomez leave to amend, Ignacio Osorio-Cruz was added as a named plaintiff on August 28, 2018. (Docs. 93, 95.)

Bedrosian Farms moved for summary judgment on the claims raised against the company, after which Plaintiffs stipulated to dismiss the claims against Bedrosian Farms. (Docs. 91, 97.) Based upon

---

[1] The parties later stipulated to dismiss the claims under PAGA, indicating the claims of the state of California were dismissed without prejudice and the claims of the named plaintiffs were dismissed with prejudice. (Docs. 159.) The Court construed the stipulation "as a joint request to amend the First Amended Complaint under Fed. R. Civ. P. Rule 15, to delete the PAGA claims and all references to it." (Doc. 188 at 3.) Accordingly, the Court granted the stipulation and deemed the FAC "to be amended to delete the PAGA claim set forth in the Ninth Claim for Relief and to delete all references to PAGA made throughout the complaint." (*Id.*)

the stipulation of the parties, the Court dismissed the claims against Bedrosian Farms with prejudice on September 6, 2018.  (Doc. 98.)  Thus, J. Jacobo Farm Labor Contractor is now the only defendant.

Gomez and Osorio-Cruz moved for class certification, requesting certification of a class including "all individuals who have been employed or are currently employed, by Defendant[] J. Jacobo Farm Labor Contractor Inc. as a non-exempt 'field worker' or agricultural worker who worked at any time from September 30, 2011 up to the present."  (Doc. 108 at 2.)  Plaintiffs also proposed several subclasses based upon the claims raised, including rest breaks for those who worked on a piece rate basis, meal breaks, inaccurate/incomplete wage statements, MAWPA, and claims under Labor Code Section 17200.  (*Id.* at 2-4.)  The Court granted the motion in part, and certified the "Wage Statement" subclass of "[a]ll individuals who were employed as a non-exempt field worker or agricultural worker from September 30, 2012, to November 5, 2019, by J. Jacobo Farm Labor Contractor, Inc."  (Doc. 114 at 56.)  The Court appointed Osorio-Cruz as the sole class representative; and appointed Stan Mallison, Hector Martinez, Mario Martinez, and Edgar Aguilasocho as Class Counsel.  (*Id.*)

Plaintiffs moved for reconsideration regarding claims that were not certified, and the Court granted the motion.  (Docs. 117, 126.)  The Court determined "Plaintiffs' rest break claim, wages upon termination claim, accurate itemized wage statement claim[], MAWPA claim, and unfair business practices claim warrant class certification under Rule 23(b)(3)."  (Doc. 126 at 12-13 [footnote omitted].)  Therefore, the Court certified an additional "Piece Rate Rest Period" class to address these claims.  (*Id.* at 13.)  Defendant also filed a motion for reconsideration (Doc. 129), and the Court modified the "Piece Rate Rest Period" class definition to include: "individuals who have been employed, or are currently employed, by Defendant as a non-exempt 'field worker' or agricultural worker, who worked on a piece rate basis at any time from September 30, 2011, to November 5, 2019, and were not separately compensated for rest periods during their piece rate shifts."  (Doc. 138 at 13.)

After the parties filed their proposed class notice, the Court determined further modifications of the class definitions were necessary to clarify the certified claims for the putative class members.  (*See* Doc. 151.)  Ultimately, the Court determined the class notice should contain the following definitions for the putative class:

**Inaccurate/Incomplete Wage Statement Subclass:**
All individuals who were employed by J. Jacobo Farm Labor Contractor Inc. as a non-exempt field worker or agricultural worker at any time from September 30, 2012, to November 5, 2019.

The Inaccurate/Incomplete Wage Statement Subclass applies to the certified claim for Defendant's alleged violation of the California Labor Code for failure to provide accurate wage statements.

**Piece Rate Rest Period Subclass:**
All individuals who were employed by J. Jacobo Farm Labor Contractor Inc. as a non-exempt field worker or agricultural worker at any time from September 30, 2011, to November 5, 2019, and who worked on a piece rate basis and were not separately compensated for rest periods during their piece rate shifts.

The Piece Rate Rest Period Subclass applies to the certified claim for Defendant's alleged violation of California Labor Code and Industrial Wage Order provisions regarding employee rest periods. The subclass also applies to the following certified claims that are derivative of the rest period claim: alleged violations of the federal Agricultural Workers Protection Act, California's unfair competition law under California Business and Professions Code, and California Labor Code and Industrial Wage Order provisions regarding wage statements and separation wages.

(Doc. 151 at 6; *see also id.* at 7.)  The Court approved the class notice and ordered service upon the class members on April 8, 2021.  (Doc. 155 at 4.)

In late 2022, the parties engaged in limited expert witness discovery.  (*See* Doc. 161 at 2-3.) Plaintiffs designated an expert witness, Aaron Woolfson, and produced his report to Defendant on October 28, 2022.  (*Id.* at 2, ¶ 3.)  Defendant disclosed a rebuttal expert and produced his report on November 8, 2022.  (*Id.*, ¶ 4.)  Defendant moved to exclude testimony from Mr. Woolfson and moved to decertify the class.  (Docs. 167, 168.)  Defendant argued that Plaintiffs could not establish commonality, or that "questions of law or fact common to class members predominate over any questions affecting only individual members or that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  (Doc. 168 at 5.)  The Court denied Defendant's motions to exclude the expert testimony and to decertify the classes on May 23, 2023.  (Doc. 178.)

Following the denial of the motion to decertify the classes, the parties participated in a private mediation with Judge Donald Black.  (Doc. 190-2 at 9.)  Stan Mallison reports that J. Jacobo Farm Labor Contractor ceased doing business and financial documents show "about $100,000 in total assets." (Doc. 202-2 at 10, Mallsion Decl. ¶ 17.)  Based upon this information, the parties "accepted [the]

mediator's proposal to resolve the Lawsuit" for a gross settlement fund of $100,000.  (*Id.*, ¶¶ 17-18.)  According to Mr. Mallison, "the primary impetus of the proposed settlement agreement [was] Defendant's limited financial resources."  (*Id.*, ¶ 17.)

The parties entered into the "Settlement Agreement and Release," which Plaintiff Marisol Gomez executed on November 16, 2023; and Javier Jacobo executed on behalf of Defendant J. Jacobo Farm Labor Contractor on November 9, 2023.  (Doc. 190-3 at 22; Doc. 202-3 at 22.)  Gomez filed a motion for preliminary approval of the agreement on January 10, 2024.  (Doc. 190.)

In the motion for preliminary approval, Gomez reported she is "the only Plaintiff and Class Representative, due to the passing of Ignacio Osorio."  (Doc. 191-1 at 6, n.6; *see also* Doc. 190-2 at 8, Mallison Decl. ¶ 8.)  Because counsel did not comply with the requirements of Rule 25 of the Federal Rules of Civil Procedure for filing a notice of suggestion of death on the record, and there was nothing to indicate counsel served the nonparty successors or representatives of Osorio-Cruz, the Court ordered their compliance with Rule 25.  (Doc. 192.)  Thereafter, counsel filed a "Notice of Suggestion of Death upon the Record"—reporting that Mr. Osorio-Cruz passed away on July 26, 2022—and served the Notice upon the adult son of Mr. Osorio-Cruz as the successor-in-interest.  (Docs. 193, 197.)  The Court dismissed the claims of Mr. Osorio-Cruz pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure on August 14, 2024.  (Doc. 198.)

The Court ordered supplemental briefing on terms in the settlement, including the release for claims under the Fair Labor Standards Act and a provision setting minimum payments for class members.  (Docs. 192, 199.)  Further, the Court directed Gomez to "address whether the settlement is fair, reasonable, and adequate under current federal law," because the initial motion evaluated the terms under state law.  (Doc. 199 at 3 [ internal quotation marks, citation omitted].)  Gomez filed the supplemental brief on September 6, 2024, and a notice of errata on September 9, 2024.  (Docs. 200, 202.)  Gomez also filed supplemental declaratory evidence to address the qualifications and experience of the proposed class counsel.  (Doc. 205.)

Defendant did not oppose the motion for preliminary approval of the settlement.  However, the parties filed stipulations regarding the FLSA release and minimum payment provisions, indicating the terms of the settlement may be modified.  (Docs. 195, 203.)

**THE PROPOSED SETTLEMENT**

Pursuant to the proposed "Settlement Agreement and Release" ("the Settlement"), the parties agree to a gross settlement amount of $100,000.00 for the class defined as follows:

> All individuals who have been employed or are currently employed by Defendant J. Jacobo Farm Labor Contractor Inc. as a non-exempt "field worker" or agricultural laborer who worked at any time from September 30, 2011 to November 5, 2019.

(Doc. 202-2 at 2-4, Settlement §§ I.A, I.Q.)  Defendant also agrees "to pay its share of any payroll taxes in addition to the Gross Settlement amount."  (*Id.* at 4, § I.Q.)  Defendant agrees to pay $50,000 to the appointed Settlement Administrator within 15 days of an order granting preliminary approval, and the remaining $50,000 within 15 days of an order granting final approval.  (*Id.* at 7, § III.B.)  Late payments by Defendant "will incur interest at the statutory rate for a judgment for wages under California Labor law."  (*Id.*, § III.A.3.)

**I.      Payment Terms**

The settlement fund will cover payments to class members with additional compensation to the Gomez as the Class Representative.  (Doc. 202-3 at 6-7, Settlement § III.A.)  The Settlement also provides for payments to Class Counsel and the Settlement Administrator.  (*Id.*)  Specifically, the Settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive an incentive award up to $5,000;

- Class counsel will receive up 1/3 of the gross settlement amount for fees, and costs in an amount to be determined by the Court[2];

- The Settlement Administrator will receive up to $25,000 for fees and expenses.

(*Id.* at 9-11, Settlement § III.C; Doc. 202-1 at 5.)  After these payments, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to class members.  (*Id.* at 5, Settlement § I.T.)  Plaintiff reports that if the Court approves the proposed payments—including 25% attorney fees and the maximum class representative enhancement award under the Settlement—the anticipated Net

---

[2] Class Counsel assert, "Considering the modest recovery for Class Members, Class Counsel will take a reduced Class Counsel fee of 25% of the Gross Settlement Amount."  (Doc. 202-1 at 5, citing Mallison Decl. ¶¶ 20-23 [Doc. 202-2 at 10-11].)  In addition, Class Counsel estimate the litigation costs "to be no more than $35,266."  (*Id.* at 13, citing Mallison Decl. ¶¶ 21, 37-38 [Doc. 202-2 at 10, 15-16].)

Settlement Amount for distribution to the class members is $9,734.00.  (Doc. 202-1 at 10.)  If the Court approves less than the amount requested for attorney's fees and costs, "the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members."  (*Id.* at 8, Settlement § III.C.2.)  No funds from the gross settlement fund shall revert to Defendant, and "Participating Class Members are entitled to 100% of the Net Settlement Amount."  (*Id.* at 11, § III.E.7.)

Class members are not required to submit a claim to receive a share from the Net Settlement Amount.  (*See* Doc. 202-3 at 9-10, Settlement § III.E; *see also* Doc. 202-1 at 5.)  Class members' shares will be distributed on a pro rata basis, with shares "calculated by dividing the Net Settlement Amount by the total number of pay periods worked by each Class Member from September 30, 2011 to November 5, 2019."  (Doc. 202-1 at 10, citing Settlement § III.E.1.)  Thus, the exact amount settlement class members receives depends upon how long they worked for Defendant.  However, with an estimated 4,202 class members, the average payment is approximately $2.32.

## II.    Releases

The Settlement provides that Gomez and class members, other than those who elect not to participate in the Settlement, shall release Defendant from claims arising in the class period.  (Doc. 202-3 at 17-18.)  Specifically, the release for class members provides:

> Plaintiff and every member of the Settlement Class (except those who opt out, as described herein) will fully release and discharge Defendant, its past, current, and future officers (including Javier Jacobo), directors, shareholders, employees, agents, principals, heirs, representatives, and its respective successors, predecessors in interest, parents subsidiaries, affiliates, and attorneys (collectively the "Released Parties") from all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, damages, attorney's fees and costs, based on the certified claims during the Class Period, which are plead in the FAC or which could have been plead on the factual allegations in the FAC, including alleged violations of California Labor Code sections 201, 202, 203, 204, 205.5, 206, 210, 214, 216, 218, 218.5, 218.6, 221, 225.5, 226, 226.2, 226.3, 226.6, 226.7, 256, 510, 512, 558, 558.1, 1174, 1174.5, 1185, 1194, 1194.2, 1197, 1197.1, 1199, the applicable wage order, or under the Migrant and Seasonal Agricultural Worker Protections Act (29 U.S.C. § 1801, et seq.) (collectively, the "Released Claims"). Released claims also includes a) claims that could have been brought under the Fair Labor Standards Act or similar federal or state governmental agencies regulating wage and hour or labor and employment laws. For members of the Settlement Class who do not validly opt out, the release period shall run from September 30, 2011, through November 5, 2019 ("Class Period").The release applies regardless of whether the Class Member deposits his/her settlement check.

7

(Doc. 202-3 at 17, Settlement § IV.A.)

The release for Gomez encompasses more claims than those identified for Settlement Class Members, because she agreed to release any claims that could have arisen during the course of his employment with Defendant, not just those claims constrained to the facts alleged in this lawsuit. Specifically, the release for Gomez provides:

> In consideration of their Settlement Shares, and the other terms and conditions of the Settlement, Plaintiff hereby fully and finally releases Jacobo and Released Parties from any and all claims, rights, demands, liabilities, obligations, penalties, costs, expenses, attorneys' fees, rights, damages, suits, indemnities, actions and causes of action of every nature and description whatsoever in law, equity or otherwise, or any other monetary or non-monetary relief, that any of them had, now have, or may have in the future, including any arising in any way from Plaintiff's employment with Jacobo or the cessation thereof, whether such claims are known or unknown, suspected or unsuspected, arising on or before the date on which Plaintiff sign this Agreement (except for any claims that cannot be released by law).
>
> Plaintiff further expressly waives any rights against Jacobo and Javier Jacobo and the Released Parties conferred upon them by California Civil Code Section 1542, and expressly consents that this Agreement shall be given full force and effect according to all of its terms, including those terms relating to unknown and unsuspected claims, if any.

(Doc. 202-3 at 18, Settlement § IV.3[3], emphasis omitted.)  Thus, claims released by Gomez—but not the Settlement Class—include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act, and the Employee Retirement Income Security Act.  (*See id.*)

### III.    Objections and Opt-Out Procedure

The proposed "Notice of Class Action Settlement and Your Rights" (the "Notice") explains to class members they "need not take any action" to receive a settlement share.  (Doc. 202-4 at 4.) However, any class member who wishes may file objections or elect not to participate in the Settlement.  (Doc. 202-3 at 13-14, Settlement § III.F.2.)

Individuals who wish to be excluded from the Settlement Class must submit a completed "Election Not to Participate in Settlement" form to the Settlement Administrator within 45 days of the mailing of the Notice Packet.  (Doc. 202-3 at 13, Settlement § III.F.2.c.)  The form includes the

---

[3] The sections in this portion of the Settlement are misnumbered.  (*See* Doc. 202-3 at 18-19.)  For the sake of clarity, the Court retains the section numbers identified in the Settlement.

8

statement: "I have received notice of the proposed Settlement in the Lawsuit and wish to be excluded from the Class and not to participate in the proposed Settlement. I understand this means that I will not be bound by the Settlement and also will not share in the class action Settlement proceeds (if eligible)." (Doc. 202-4 at 7, emphasis omitted.)  Individuals requesting exclusion must sign and date the form, and provide identifying information including their address, telephone number, and "employee identification number or last for digits of Social Security number."  (*Id.*)

Class members may also object to the settlement terms by mailing a written statement to the Settlement Administrator within 45 days of the mailing of the Notice Packet.  (Doc. 203-2 at 14, Settlement § III.F.2.d.)  An objection must include:

> (i) the objecting person's full name, address, and telephone number; (ii) the words "Notice of Objection" or "Formal Objection"; (iii), in clear and concise terms, the legal and factual arguments supporting the objection; (iv) list identifying witness(es) the objector may call to testify at the Final Approval hearing; and (v) provide true and correct copies of any exhibit(s) the objector intends to offer at the Final Approval hearing.

(*Id.*)  The proposed Notice also explains these requirements.  (Doc. 202-4 at 5.)  Further, class members are informed that they cannot both ask to be excluded *and* object to the Settlement terms.  (*Id.*)

## IV.    Cy Pres Beneficiary

Since many class action settlements result in unclaimed funds, parties should have a plan for distributing unclaimed funds. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). The options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants.  *Id.*, 904 F.2d at 1307.  Here, the parties agree that a cy pres beneficiary will receive uncashed or returned funds under the Settlement.  (Doc. 202-3 at 17, Settlement § III.F.4.)  Gomez indicates that she "will propose Legal Aid at Work" be appointed as the cy pres beneficiary at the final approval stage.  (Doc. 202-1 at 13.)

The Ninth Circuit determined a proposed cy pres recipient should be "tethered to the nature of the lawsuit and the interest of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011).  In other words, the Ninth Circuit "require[s] that there be a driving nexus between the plaintiff class and the cy pres beneficiaries."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citing *Nachshin*, 663 F.3d at 1038).  The Court explained that without such tethering, the distribution

of funds "may create the appearance of impropriety" by catering "to the whims and self interests of the parties, their counsel, or the court." *Nachshin*, 663 F.3d at 1038. Thus, a cy pres award should not benefit a group that is "too remote from the plaintiff class." *Six Mexican Workers*, 904 F.2d at 1308.

In identifying a cy pres beneficiary, the Ninth Circuit directs courts to consider whether awards to the beneficiary "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Nachshin*, 663 F.3d at 1040. Further, the Court must consider whether the cy pres distribution is appropriate given the "size and geographic diversity" of the class members. *Id.* at 1040-41 (citing, e.g., *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002); *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989)). Gomez did not provide any analysis of these factors to assist the Court in evaluating whether Legal Aid at Work is an appropriate cy pres beneficiary.[4]

Nevertheless, the Ninth Circuit observed also that issues related to the identity of a cy pres beneficiary are not generally ripe until there are funds that remain unclaimed. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding cy pres distribution "becomes ripe only if entire settlement fund is not distributed to class members" and declining to determine propriety of cy pres at that time). The Court explained that where a cy pres distribution is contingent on the outcome

---

[4] In support of the request to appoint Legal Aid at Work—or any other cy pres beneficiary—Plaintiff **SHALL** clearly address the factors identified by the Ninth Circuit in *Nachshin* in seeking final approval of the Settlement. Moreover, the Ninth Circuit indicated that a district court should also examine any "between the cy pres recipient and the parties or their counsel." *In re Google Referrer Header Priv. Litig.*, 869 F.3d 737, 744 (9th Cir. 2017), *vacated on other grounds, sub nom, Frank v. Gaos*, 139 S. Ct. 1041, 203 L. Ed. 2d 404 (2019). Toward that end, it important for the Court to consider factors such as "the nature of the relationship, the timing and recency of the relationship, the significance of dealings between the recipient and the party or counsel, the circumstances of the selection process, and the merits of the recipient." *Id.*; *see also City of Long Beach v. Monsanto Co.*, 2020 WL 10540857, at *2 (C.D. Cal. July 13, 2020) ("The parties shall also identify any relationship they or their counsel have with the proposed *cy pres* recipient.") Notably, the Court is aware of many other cases in which Mr. Mallison and Mr. Martinez were counsel of record and recommended the cy pres beneficiary be a pro bono law firm. *See, e.g., Rosales v. El Rancho Farms,* 2015 WL 4460635, at *9 (E.D. Cal. July 21, 2015), *report and recommendation adopted,* 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015); *Ontiveros v. Zamora,* 2014 WL 3057506, at *1 (E.D. Cal. July 7, 2014); *Ortega v. Aho Enterprises, Inc.,* 2021 WL 5584761, at *13 (N.D. Cal. Nov. 30, 2021); *Sandoval v. M1 Auto Collisions Centers,* 2017 WL 11679905, at *5 (N.D. Cal. Mar. 20, 2017). This suggests that pro bono law firms represent the interests of *counsel*, rather than the class. Indeed, Class Counsel previously worked for the CRLA, which was the recipient of the cy pres funds in many of the cases cited here. Given the dearth of information provided regarding Legal Aid at Work—including any information supporting a conclusion that the organization is tethered to the interests of the Settlement Class— the Court preliminary finds **the anticipated cy pres beneficiary is not appropriate.**

1   of shares distribution, issues regarding the identification of recipients "will not be ripe until it is

2   determined that available cash remains in th[e] fund after the claims process has concluded." *Dennis*,

3   697 F.3d at 865.  Clearly, at this point in the proceedings, it is unknown whether funds will remain

4   from returned or uncashed checks.  Accordingly, the identity of the proposed cy pres beneficiary does

5   not prevent preliminary approval of the proposed settlement.

6                    **PRELIMINARY APPROVAL OF A CLASS SETTLEMENT**

7             Proposed class action settlements require approval, even where the Court previously certified a

8   class.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed

9   to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only

10  with the court's approval").  The Court has an obligation to "peruse the proposed compromise to ratify

11  both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327

12  F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step

13  process.  First, the Court must assess whether the proposed class exists. *Id.* (citing *Amchem Prods.,*

14  *Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed

15  settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150

16  F.3d 1011, 1026 (9th Cir. 1998)).  The decision to approve or reject a settlement is within the Court's

17  discretion. *Hanlon*, 150 F.3d at 1026.

18  **I.      Certification of a Settlement Class**

19            Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

20  provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf

21  of all."  Fed. R. Civ. P. 23(a).  The proposed Settlement Class includes:

22                    All individuals who have been employed or are currently employed by
                      Defendant J. Jacobo Farm Labor Contractor Inc. as a non-exempt "field
23                    worker" or agricultural laborer who worked at any time from September 30,
                      2011 to November 5, 2019.
24

25  (Doc. 202-3 at 2, Settlement § I.A.)  This Settlement Class appears to encompass both the "Wage

26  Statement" and "Piece Rate Rest Break" classes previously certified. (*See* Docs. 114, 126, 138, and

27  151.)  However, there has clearly been a change in circumstances given that Osorio-Cruz, the only

28  appointed class representative, is now deceased.  Thus, the Court cannot simply affirm its prior orders

                                                        11

and must determine whether Gomez satisfies the requirements of Rule 23.  Gomez contends that conditional certification of the proposed Settlement Class is appropriate.  (Doc. 202-1 at 21-24.)

### A.    Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1.    Numerosity

This prerequisite requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (finding the numerosity requirement … "satisfied solely on the basis of the number of ascertained class members").  Gomez reports there are 4,202 class members.[5]  (Doc. 202-1 at 4; *see also* Doc. 202-6 at 3.)  Therefore, joinder of all identified class members as plaintiffs is impracticable, and the numerosity requirement is satisfied.

### 2.    Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and law. *See Wal-Mart Stores*, 564 U.S. at 350.  Thus, "commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an

---

[5] Initially, Gomez estimated there were approximately 3,627 class members.  (Doc. 190-1 at 4.)  Defendant observed that this number may have been based upon pre-certification data, and was no longer accurate. Defendant requested this "be clarified as part of the supplemental briefing."  (Doc. 202-6 at 3.)  Accordingly, Gomez corrected the number of class members in the supplemental briefing.  (Doc. 202-1 at 4.)

issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

Gomez asserts the commonality requirement is satisfied because "common questions of both law and fact which exist regarding Defendants' alleged failure to provide properly paid rest breaks and itemized wage statements." (Doc. 202-1 at 22.)  Although this conclusory statement offers little assistance in analyzing whether the commonality requirement is satisfied, the Court previously addressed this factor when certifying the Inaccurate/Incomplete Wage Statement Class and Piece Rate Rest Period Class.  (*See* Doc. 114 at 37-40; Doc. 138 at 11-12.)  Addressing the alleged violations related to the wage statements, the Court observed that the claim was premised, in part, on the theory that wage statements did not include:

> (1) the address information of Defendant, (2) the address information of the grower / farm that secured the services of the employer, and (3)(a) the total hours of compensable rest, recovery, and nonproductive periods, (b) the rate of compensation, and (c) the gross wages paid for those periods during the pay period.

(Doc. 114 at 39; *see also* Doc. 108-1 at 7-8.)  The Court found common questions exist related to the wage statements because "Defendant's practices for creating wage statements were uniformly applied to all class members."  (*Id.*)  Similarly, the Court found the commonality requirement was satisfied by the "Piece Rate Rest Break" class because "the issue of whether Defendant paid for mandated rest breaks is 'susceptible to generalized, class-wide proof' … which is indicative of a common question under Rule 23(a)(2)." (Doc. 126 at 11.)  The derivative claims for wages due, violation of the Agricultural Workers Protection Act, and unfair business practices were also subject to the "common and predominating question of whether Defendant paid… mandated rest breaks" with the piece rate policy in place.  (*Id.* at 12.)  Because it appears resolution of issues—such as whether Defendant's payroll and wage policies violated California wage and hour laws—would apply to the claims of each of the class members, the Court finds the commonality requirement is satisfied.

### 3.     Typicality

This requirement demands that the "claims or defenses of the representative parties are typical

13

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Gomez asserts that her "claims are essentially identical to all other non-exempt farm laborers employed by Defendants, as all Class Members were subject to the same practices of Defendants." (Doc. 202-1 at 22, citing Mallison Decl. ¶ 34 [Doc. 202-2 at 14-15].)  In the complaint, Gomez alleged that she was paid on a piece rate basis while working for Defendant.  (Doc. 1 at 4, ¶ 13.)  In addition, Gomez alleged she was not paid "all of [her] wages due for work performed" when her employment ended.  (*Id.* at 20, ¶ 92.)  Further, Gomez alleged Defendant failed to provide wage statements with required information, including accurate information concerning the piece rates and "correct employer name and information."  (*Id.* at 23, ¶ 100.)  Thus, it appears Gomez alleged similar injuries as those of class members for the "Inaccurate/Incomplete Wage Statement" and "Piece Rate Rest Period" classes now incorporated into the Settlement Class.  Because Gomez was subjected to the same company policies and payment procedures as Settlement Class Members—and there are no unique defenses identified by either party at this time— the Court finds the typicality requirement is satisfied for purposes of settlement.[6] *See Hanon*, 976 F.2d at 508.

### 4.      Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon

---

[6] The Court is somewhat concerned there is a unique defense that may be applied to Gomez, because she filed an amended complaint that added a new named plaintiff shortly before seeking class certification, and Gomez did not seek appointment as the class representative when the prior classes were certified.  (*See* Docs. 83, 95, 108.)  In addition, in the Joint Pretrial Statement, Defendant indicated a disputed fact included "[w]hether Plaintiff Marisol Gomez released her individual claims pursuant to a settlement and release."  (Doc. 182 at 6.)  Nevertheless, there is no information concerning the release that Gomez may have signed, and Defendant agreed it would not "object to [Gomez's] appointment as class representative for purposes of settlement."  (Doc. 202-3 at 3, Settlement § I.I.)  Accordingly, the Court finds the question of a prior release does not thwart her appointment as a class representative for the Settlement Class.

1  them.  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied if the

2  representative party "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

3  23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named

4  plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

5  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego*

6  *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

7  a.  *Proposed class representative*

8      Mr. Mallison reports that "[p]rior to commencing this action," counsel interviewed Gomez "in

9  detail regarding her working conditions and Defendants' wage payment practices."  (Doc. 202-2 at 8,

10  Mallison Decl. ¶ 12.)  According to Mr. Mallison, Gomez "carried out all required tasks in this case to

11  help [counsel] pursue this action, providing [them] with information, documents, insights, opinions,

12  and necessary decisions to make this case successful."  (*Id.* at 7, ¶ 10.)  Further, Mr. Mallison asserts

13  that Gomez "actively participated in … the negotiations leading to the settlement of this matter."  (*Id.*

14  at 14, ¶ 32.)  Moreover, the interests of the named plaintiff are aligned with those of the class

15  members: to maximize their recovery.  Thus, for settlement purposes only, the Court also finds Gomez

16  is an adequate class representative.

17  b.  *Proposed class counsel*

18      Mr. Mallison reports that his law firm, Mallison & Martinez, has extensive experience litigating

19  wage and hour class actions and serving as class counsel.  (*See* Doc. 202-2 at 2-7, Mallison Decl. ¶¶ 3-

20  10.)  Mr. Mallison asserts: "Neither I, nor any member of the firm, have any personal affiliation or

21  family relationship with the Plaintiffs.  The only relationship with Plaintiffs in this current litigation is

22  an attorney-client relationship."  (*Id.* at 7, ¶ 10.)  Similarly, Mario Martinez from Martinez Aguilasocho

23  Law, Inc. (formerly Martinez Aguilasocho & Lynch), describes significant experience "representing

24  employees on large-scale class actions, particularly on behalf of low income workers and

25  farmworkers."  (Doc. 205 at 5, Martinez Decl. ¶ 7; *see also id.* at 2-8, ¶¶ 2-8.)  Mr. Martinez also

26  reports, "Neither I nor any attorney at Martinez Aguilasocho Law, Inc. have any conflicts of interest

27  with the class members in this case.  Our only relationship with the class representatives and class

28  members is the attorney-client relationship."  (*Id.* at 8, ¶ 10.)

15

Defendant does not oppose appointment of the proposed Class Counsel, or assert they are inadequate to represent the interest of the class. After reviewing the qualifications of the firms of Mallison & Martinez and Martinez Aguilasocho, law, Inc., the Court finds counsel satisfy the adequacy requirements.[7] Accordingly, their request for appointment as Class Counsel will be granted.

**B.      Certification of a Class under Rule 23(b)(3)**

Once the requirements of Rule 23(a) are satisfied, the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). Gomez asserts certification of the settlement class is appropriate under Rule 23(b)(3), which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These two requirements are generally called the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 564 U.S. at 363 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

1.      Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623). "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans,* 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).

---

[7] The Court previously expressed serious concerns regarding the quality of the work product by Class Counsel in this action. (Doc. 114 at 53; *see also id.* at 53-56.) The Court noted that "the quality of the filings and briefing bear on the adequacy of class counsel, which is a required consideration under Rule 23(a)." (*Id.* at 53.) The Court observed that "the deficiencies with the briefing surrounding the certification motion significantly increased the burden on the Court." (*Id.*) Since then, counsel neglected to notify the Court of the death of Mr. Osorio Cruz—the only appointed class representative for the certified classes— until seeking preliminary approval of the settlement and did not comply with the requirements of Rule 25 of the Federal Rules of Civil Procedure until ordered to do so. (*See* Docs. 192, 194.) Also, deficiencies in briefing continued with the pending request for preliminary approval. The memorandum in support of the motion addressed the terms of the settlement under *state* law, despite that the matter is in *federal* court. (*See* Doc. 190-1 at 15.) Furthermore, counsel did not provide any evidence concerning the qualifications of Mario Martinez and Edgar Aguilasocho until ordered by the Court to support their request for appointment as counsel. .

16

As discussed above, and in the Court's prior orders related to certification, it appears the class claims are subject to proof by common evidence related to the alleged unlawful wage and payroll policies and practices.  Consequently, the Court finds adjudication of the claims via a class action promotes judicial economy, and the predominance factor is satisfied.

### 2.   Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) interests of class members, (2) other pending litigation, (3) the desirability of concentrating claims in one forum, and (4) difficulties with the management of the class action.  *Id.; see also James v. Uber Techs. Inc.*, 338 F.R.D. 123, 143 (C.D. Cal. 2021) (indicating the factors identified in Rule 23(b)(3) address the "superiority" analysis).

#### a.   Class members' interest in individual litigation

The Court is directed to consider "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  This factor is most relevant when class members "suffered sizeable damages or [have] an emotional stake in the litigation."  *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011).  The Ninth Circuit explained that "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."  *Zinser*, 253 F.3d at 1190.

At this point in the proceedings, there is no indication class members desire to control this action or proceed with individual litigation.  With 4,202 class members sharing the estimated Net Settlement Amount of $9,734.00, it appears the average payment is approximately $2.32.  (*See* Doc. 202-1 at 4, 10.)  It is unlikely that individuals would pursue such small claims. *See Zinser*, 253 F.3d at 1190.  As this Court previously observed, "When the individual claims of class members are small, the class action facilitates the spreading of the litigation costs among the numerous injured parties."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, (E.D. Cal. 2013) (internal quotation marks,

citation omitted).  Thus, the factor weighs in favor of certification.

#### b.    Other litigation

Next, the Court considers "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  The parties did not identify any other litigation related to the claims addressed raised by Gomez or encompassed in this Settlement.  Therefore, this factor weighs in favor of class certification.

#### c.    Concentration in one forum

Third, the Court must consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  There is no suggestion the Eastern District is an undesirable forum for the matter, which raises wage and hour claims on behalf of individuals who worked within this District.  *See United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 419 (E.D. Cal. 2018).  Moreover, when "parties … agreed on a proposed Settlement Agreement, the desirability of concentrating the litigation in one forum is obvious." *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (internal quotation marks, citation omitted).  Therefore, this factor weighs in favor of certification.

#### d.    Management of the action

Finally, the Court must consider "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  The Supreme Court explained that igeneral, "manageability … encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  Because the parties entered into a settlement agreement that encompasses the claims of two certified classes, it does not appear there are any problems with managing the action.  *See Espinosa v. Ahearn*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial").  Further, the Court need not speculate as to manageability of the classes if the case were to proceed to trial.  *See Amchem Prods.*, 521 U.S. at 620.  Consequently, this factor weighs in favor of certification of the Settlement Class.

### C.    Conclusion and Certification

The Court finds Gomez carries the burden to show the prerequisites of Rule 23(a) are satisfied,

and the class is maintainable under Rule 23(b)(3).  Accordingly, the request to conditionally certify the Settlement Class defined above is **GRANTED**.

## II.    Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, rmeasonable, and adequate."  Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).

The Ninth Circuit identified several factors for the Court to evaluate whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).

The Federal Rules now also identify "specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  In relevant part, Rule 23(e) directs the Court to consider whether:

> (A)  the class representatives and class counsel have adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>       (i) the costs, risks, and delay of trial and appeal;
>       (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>       (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>       (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24.  "The goal of amended Rule 23(e) is to focus the district court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at \*5 (C.D. Cal. June 8, 2021) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).  The Ninth Circuit determined the revised Rule 23 requires courts "to go beyond

[its] precedent." *Briseño*, 998 F.3d at 1026.  Nevertheless, the Ninth Circuit also instructs courts to examine the prior factors "comprehensively."  *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

### A.    Extent of Discovery Completed and Stage of the Proceedings

Gomez asserts the parties "conducted significant amounts of written discovery, and Defendants produced documents, including payroll and timekeeping records for Class Members during the Class Period."  (Doc. 190-1 at 6-7.)  Mr. Mallison reports that Class Counsel reviewed the produced data, "and engaged their expert to perform an extensive review and analysis of these records."  (Doc. 202-2 at 8, Mallison Decl. ¶ 13.)  In addition, Mr. Martinez reports that Class Counsel interviewed class members to investigate the class claims.  (Doc. 205 at 8, Martinez Decl. ¶¶ 9-10.)  Mr. Mallison believes "the investigation and discovery conducted… was thorough and elaborate."  (Doc. 202-2 at 8, Mallison Decl. ¶ 13.)

Given the discovery completed related to class issues and the extensive litigation of the certified issues—including motions to reconsider and decertify the classes—these factors support preliminary approval.  *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. Mar. 31, 2017) (explaining these factors favor settlement when "the parties have conducted extensive discovery and thoroughly litigated the issues").

### B.    Strength of the Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 720 F. Supp. 1379, 1388 (D. Az. 1989)).

The Court previously certified two classes, and the fact-finder would be required to evaluate these claims on the merits.  Mr. Mallison reports the class discovery "put[] the parties in an excellent position to assess the strengths and weaknesses of the case, as well as its value."  (Doc. 202-2 at 8, ¶ 13.)  Thus, it appears the parties made informed decisions, which lead to resolution of the matter, and this factor weighs in favor of preliminary approval of the Settlement.

### C.    Representation of the Class

To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether

the interests of the named plaintiff are "aligned with the interests of the Class Members."  *See Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class Counsel are experienced and competent" supports a conclusion that the class is adequately represented.  *Id.; see also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively."  *Mandalevy v. Bofi Holding, Inc.,* 2022 WL 1556160, at *6 (S.D. Cal. May 17, 2022) (quoting 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)).

Gomez's interests appear aligned with those of class members, as they share a common interest in challenging the alleged wrongful payment and payroll policies.  In addition, Class Counsel are clearly experienced in class action litigation.  (*See* Doc. 42-2 at 2-8, Mallison Decl. ¶¶ 4, 7-9; Doc. 205 at 2-8 Martinez Decl. ¶¶ 2-8)  Because Gomez carried the burden to show the adequacy prerequisite was satisfied under Rule 23(a), the Court finds the requirement under Rule 23(e)(2) is also satisfied. *See Flores v. Dart Container Corp.*, 2021 WL 1985440, at *5 (E.D. Cal. May 17, 2021) ("Because the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met").

### D.     Negotiation of the Settlement

Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement. *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009).  The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  The Ninth Circuit observed that "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee."  *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted).

Thus, the Court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining—as Gomez asserts (Doc. 202-2 at 15)— or the product of collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 94; *see also Briseño*, 998 F.3d at 1023.  These "more subtle signs" include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id.* (internal quotations, citations omitted).

### 1.    Whether there is a disproportionate distribution to counsel

The Settlement provides that Class Counsel may request attorneys' fees up to 1/3 of the settlement fund.  (Doc. 202-3 at 8, Settlement § III.C.2.)  However, Class Counsel report they will seek "a reduced … fee of 25%."  (Doc. 202-1 at 5.)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  Because the anticipated fees requested are within the range awarded by the Ninth Circuit, the Settlement Agreement does not provide a disproportionate distribution to Class Counsel.  *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 946, 984  (E.D. Cal. 2012) (finding "[c]lass counseling is not receiving a disproportionate distribution of the settlement, whether in percentage terms or in absolute terms," where counsel requested 29% of the fund); *Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015) (finding no disproportionate distribution where counsel requested a third of the settlement fund because it was "not unreasonable as an upper bound" of fees awarded in the Circuit).

### 2.    Existence of a "clear sailing" agreement

In general, a "clear sailing" provision is one in which the parties agree to the "payment of

attorneys' fees separate and apart from class funds." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 947.  However, the Ninth Circuit recognized also a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Lane*, 696 F.3d at 832; *In re Bluetooth Headset Prods.*, 654 F.3d at 947.

Here, Defendant agreed that "Jacobo will not oppose Class Counsel's application to the Court for an award of 1/3 of the Gross Settlement Amount as their Class Counsel Fees Payment, plus an additional amount for reasonable costs."  (Doc. 202-3 at 8, Settlement § III.C.2.)  However, the parties also agreed "[t]he ultimate amount of any award for Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment is to be determined by the Court."  (*Id.*)  Thus, the Settlement includes a version of a "clear sailing agreement."  Nevertheless, the existence of a clear sailing provision is not necessarily fatal to approval.  *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 948; *see also In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling").  Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class."  *Id.* (citing *Staton*, 327 F.3d at 954).

No evidence is currently before the Court to evaluate the reasonableness of the fees requested. However, the Court will determine at the final approval stage whether the fees are reasonable, based upon evidence submitted by counsel.  Thus, this factor does not weigh against preliminary approval of the settlement and will be revisited upon the filing of a motion for attorneys' fees and final approval of the terms.  *See Singh v. Roadrunner Intermodal Servs. LLC*, 2019 WL 316814 at *7-8 (E.D. Cal. Jan 24, 2019) (not finding collusion between the parties, despite a clear sailing agreement, where the fee award was analyzed and determined to be reasonable).

### 3.    Whether there is a reversion to Defendant

Finally, the parties did not arrange for any unawarded fees to revert to Defendant.  Instead, the parties acknowledge in the Settlement Agreement that the Court may approve less than the requested amount of fees, in which case "the remainder will be retained in the Net Settlement Amount for

distribution to Participating Class Members." (Doc. 202-3 at 8, Settlement § III.C.2.)  Because there is no reversion to Defendant, this factor supports the conclusion that there is no collusion between the parties. *See, e.g., Wise v. Salon*, 2020 WL 1492672 (E.D. Cal. Mar. 26, 2020) (where there was no reversionary cause, the court was "satisfied that the settlement is not the product of collusion")

### 4.     Findings on collusion

Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations." *See Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D 375, 383 (E.D. Cal. 2018 (citation omitted).  Thus, this factor under Rule 23 supports preliminary approval of the class settlement.

### E.     Amount Offered and Relief Provided to the Class

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing an agreement, the Court should examine "the complete package taken as a whole," and the proposed settlement is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

The proposed gross settlement amount is $100,000.00.  (Doc. 202-2 at 2-4, Settlement § I.Q.) After the anticipated deductions from the gross settlement, Gomez estimates that $9,734.00 will be dispersed to Participating Class Members.  (Doc. 202-1 at 10.)  Although this is significantly low with an estimated class of 4,402, the gross settlement amount is based upon the remaining assets of Defendant.  (*See* Doc. 205 at 9, Martinez Decl. ¶ 9; *see also* Doc. 202-2 at 10, Mallison Decl. ¶ 17.) Analyzing the factors identified in Rule 23 and by the Ninth Circuit, as discussed below, the Court finds the amount offered and relief provided support preliminary approval of the Settlement.

### 1.     Costs, risks, and delays

"A central concern when evaluating a proposed class action settlement relates to the cost and risk involved in pursuing a litigated outcome." *Feltzs v. Cox Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications adopted].)  Approval of settlement is "preferable to lengthy and expensive litigation

with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further litigation, which could potentially "waste the remaining assets of Defendant[]," and leave nothing for the class to recover.  (*See* Doc. 202-2 at 10, ¶ 17.)

The parties agree the claims are "highly disputed."  (Doc. 202-3 at 6, Settlement § II.H.) Defendant indicates it "has taken into account the uncertainty and risks inherent in any litigation and … concluded that further defense of the Lawsuit would be protracted and expensive."  (*Id.*)  Similarly, Gomez reports counsel "carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, …and other various possible risks and delays."  (Doc. 202-1 at 6, citing Mallison Decl. ¶¶ 19, 29-30 [Doc. 202-2 at 10, 13-14].)  Further, Gomez contends the Settlement "provides a certainty of recovery," while "further litigation or trial of the matter would substantially delay any compensation to Class Members and/or potentially imperil the financial stability of Defendant[], and the[] ability to provide any remedies in this action."  (*Id.* at 7.)

Notably, employment law class actions are, by their nature, time-consuming and expensive to litigate.  *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 at *6 (C.D. Cal. Aug. 4, 2015). If the Settlement is rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.  The time and expense of continued litigation could outweigh any additional recovery.  Indeed, as discussed above, Defendant ceased operations and has only approximately $100,000 in remaining assets, and the costs of additional litigation may further diminish this amount.  On the other hand, the proposed settlement provides for immediate recovery on claims presented by Gomez on behalf of the class, even as limited as the recovery may be.  Due to the acknowledged risk of the claims of class members, costs of future litigation that may reduce—or even preclude— any recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of preliminary approval of the Settlement.  *See Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity,

delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### 2.    Proposed distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id*.

Settlement Class members are not required to "take any action," such as submitting a claim form, to receive their shares.  (*See* Doc. 202-4 at 4.)  Rather, class members need only take specific action if they wish to opt-out of the settlement, object to any of the terms of the settlement, or dispute the amount of their individual settlement share.  Because the class members are not required to submit and claim form, the proposed method of distribution will facilitate payment for legitimate claims and is not "unduly demanding" upon the Settlement Class.  Thus, this factor weighs in favor of preliminary approval of the settlement.  *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

### 3.    Attorneys' fees

Under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (citation omitted).  The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members."  *Id.*, quoting *Briseño*, 998 F.3d at 1024.

As discussed above, Class Counsel may request fees in the amount of one third of the gross

settlement fund, although they also express an intent to seek a lower amount.  (Doc. 202-3 at 8, Settlement § III.C.2; Doc. 201-1 at 5.)  The Court-approved payment to Class Counsel shall be made by the Settlement Administrator "out of the Gross Settlement Amount promptly upon receipt."  (*Id.*)  The Settlement also provides that all payments from the fund are "subject to timing as directed by counsel for the Parties and/or the Court."  (*Id.* at 7, § III.C.)  Because it appears specific timeframe for class payments was not identified in the Settlement, the Court must designate a period of time for the payments to the Settlement Class, the Court may the settlement shares shall be distributed within 15 days within receipt of the final installment of funds by the Settlement Administrator.[8]  Such a brief gap between payments to Class Counsel and class members does not weigh against preliminary approval of the Class Settlement.

Importantly, any party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the identified percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily.  The Court will evaluate the reasonableness of the fees request and determine the exact amount of the award upon application by Class Counsel with final approval.

### 4.    Agreement required to be identified

The Court must consider any agreement that is required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  Gomez reports there were two agreements made in connection with the proposed settlement: (1) a stipulation related to the FLSA release dated May 9, 2024; and (2) a stipulation related to the minimum payment provision dated September 13, 2024. (*See* Doc. 201-1 at 19; *see also* Docs. 195, 203.)  As discussed

---

[8] At the final approval stage, Class Counsel **shall** address whether they have any objections this timing for payments to Participating Class Members. If no objections are raised, the Court will order the payments be made within 15 days of the Settlement Administrator receiving the final installment of the gross settlement fund.

below, the identified stipulations respond to issues the Court identified and respond to orders for

supplemental briefing.  In addition, the stipulations do not involve material modifications of the

Settlement.  Accordingly, the Court finds this factor does not weigh against preliminary approval.

### F.      Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members

equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some

class members at the expense of others may be a red flag that class counsel have sold out some of the

class members at the expense of others, or for their own benefit." *Hilsley*, 2020 WL 520616, at *7

(citation omitted).

The parties agreed that class members who do not timely request exclusion from the Settlement

will receive a *pro rata* share of the Net Settlement Amount, "calculated by dividing the Net Settlement

Amount by the total number of pay periods worked by each class member during the Class Period."

(Doc. 202-3 at 9-10, Settlement § III.E.2.)  However, the Settlement also provides:

> No payments shall be made to Participating Class Members who receive
> a payment in the amount of $5.00 or less to conserve resources and
> promote efficiency of distribution. Notwithstanding this provision, all
> Participating Class Members will still be deemed to have released claims
> against Released Parties specified herein, regardless of whether they
> receive payment under this Agreement. To the extent Participating Class
> Members do not receive their settlement share because payment is not
> equal to or more than $5.00, their settlement share will be re-distributed
> pro rata to Participating Class Members who are due to all remaining
> Participating Class Members.

(*Id.* at 10, § III.E.3.)  With the minimum payment provision, Gomez anticipated that approximately

2,000 members of the class would receive settlement shares.  (Doc. 190-1 at 13, n.4.)

Previously, the Court expressed concern over this minimum payment provision, noting that

based upon the initial estimate of 3,267 class members, nearly 40% of the anticipated class would not

receive a settlement share.  (Doc. 199 at 3.)  Gomez was ordered to address "whether the settlement is

fair and adequate for these class members … who will not receive even a nominal settlement share

under the proposed terms."  (*Id.*)  The parties met and conferred regarding the provision, and "agreed

to remove Section III.E.3 of the Settlement Agreement."  (Doc. 203 at 2.)  The parties also agree that

removal of this provision is "not a material modification of the terms," such that it would render the

agreement null and void.  (*Id.*)  Accordingly, based upon the stipulation of the parties, Section III.E.3 is stricken from the Settlement.

With the above modification, shares will be distributed on a *pro rata* basis to the entirety of the Settlement Class, and the agreement treats the class members equitably.  This distribution, based upon the number of pay periods worked by class members, supports preliminary approval.  *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing that the calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked … is fair and treats class members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed plan pro rata allocation based on the number of workweeks the class member performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29, 2020) (finding a *pro rata* distribution plan was equitable and weighed in favor of approving the settlement terms).

### G.    Class Representative Service Payment

Incentive awards, service payments, for class representatives are not to be given routinely by the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'"  *Id.* (citation omitted).  In evaluating the enhancement award to a class representative, a court should consider: "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … the amount of time and effort the plaintiff expended in pursuing the litigation … and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

Pursuant to the agreement of the parties, Gomez may seek a "Class Representative Payment of

up to $5,000." (Doc. 202-3 at 7, Settlement § III.C.1.)  The Settlement explains the enhancement is to be given to Gomez "to compensate her for initiating the Lawsuit, performing work in support of the Lawsuit and undertaking the risk of liability for attorneys' fees and expenses in the event she was unsuccessful in the prosecution of the Lawsuit as well as the risk of retaliation from future employers." (*Id.* at 3, § I.I.)  Importantly, however, Gomez did not submit a declaration in support of the motion addressing the tasks undertaken *on behalf of the class* in this action.  There is no evidence related to the work performed by Gomez—such as whether she attended meetings with counsel or attended the mediation—or an estimated number of hours Gomez spent working with Class Counsel.  Without additional information the Court is unable to evaluate the reasonableness of this requested award at this time.  In seeking final approval, **Plaintiff must provide evidence supporting any requested enhancement.**  Regardless, given the flexibility of a service payment *up to* $5,000, the request for approval of a class representative enhancement is preliminarily approved.[9]

## H.   Views of Counsel

Mr. Mallison reports that "the Settlement is reasonable, fair, and adequate, as it provides compensation to class members in proportion to the relative value of their claims." (Doc. 202-2 at 10, ¶ 19.)  Similarly, Mr. Martinez opined "the proposed settlement in this case is fair, reasonable, and in the best interest of the class, particularly given Defendants' financial constraints." (Doc. 205 at 8, ¶ 11.)  Finally, the Settlement provides: "The Parties and their respective counsel believe and warrant that this Settlement reflects a fair, reasonable, and adequate settlement of the Lawsuit…." (Doc. 202-3 at 20, § IV.I.8.)  These opinions of counsel are entitled to significant weight and support approval of the Settlement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 (indicating "great weight" is given to the opinions of counsel because they "are most closely acquainted with the facts of the underlying litigation"); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("the trial

---

[9] The maximum class representative enhancement of $5,000 appears excessive in this action.  The Ninth Circuit indicated that the Court may consider the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015); *see also Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017).  There is a significant disparity between the average award and the anticipated enhancement payment, which is 5% of the gross settlement amount. *Compare with In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947 (awarding $5,000 as a service payment, which was 0.17% of the gross settlement fund).

court is entitled to, and should, rely upon the judgment of experienced counsel for the parties").

**I.      Reaction of Class Members to the Proposed Settlement**

Gomez agreed to the terms of Settlement Agreement.  (*See* Doc. 202-3 at 22.)  However, because class members have not yet received notice, the Court is unable to evaluate their reaction. Accordingly, this factor shall be revisited for final approval of the Settlement.  *See Cottle*, 340 F.R.D. at 376 ("The reaction of the class members is best assessed at the final approval hearing since the court can look at how many class members submitted … objections").

## STRIKING THE FLSA RELEASE

The Settlement indicates that "Released Claims" include "claims that could have been brought under the Fair Labor Standards Act or similar federal or state governmental agencies regulating wage and hour or labor and employment laws."  (Doc. 202-3 at 17-18, Settlement § IV.A.)  Previously, the Court noted that Gomez did not raise a claim under the Fair Labor Standards Act, and she did not address the propriety of such a release in her initial brief supporting preliminary approval.  (*See* Doc. 190-1.)  The Court observed:

> [T]he purposes of the FLSA may be frustrated where a plaintiff seeks to release a claim not previously raised in the complaint. *See Gonzalez v. Corecivic of Tenn., LLC*, 2018 WL 4388425, at *4-6 (E.D. Cal. Sept. 12, 2018). In *Gonzalez*, the Court observed at a hearing on the plaintiff's motion for preliminary approval that the proposed settlement included a release of FLSA claims, though no such claim was alleged in the initial complaint. *Id.* at *4. In response, the plaintiff requested leave "to amend the complaint to add an FLSA claim for the purpose of settling it." *Id.* The Court observed that amending a complaint under such circumstances "raises red flags in large part because it appears plaintiff agreed to settle the FLSA claim before he ever considered litigating it." *Id.* In addition, the "atypical circumstances create a potentially indelible stain for the settlement agreement as drafted, because they point toward collusion between the parties." *Id.* Similarly, here, there was no FLSA claim raised in the complaint, and it appears the specific mention of the claim in the release thwarts the purposes of the FLSA. Under such circumstances, the Court is unable to find the release is proper.

(Doc. 192 at 2-3.)  Accordingly, the Court ordered Class Counsel to file supplemental briefing regarding claims arising under the FLSA.  (*Id.* at 3.)  In the alternative, the Court indicated "the parties may file a stipulation to amend the settlement…." (*Id.*)

On May 9, 2024, the parties filed a "Stipulation to Amend the Settlement Agreement to Remove the Sole Mention of FLSA."  (Doc. 195.)  Specifically, the parties stipulated "to remove the

sole mention of the FLSA from the proposed Settlement and further stipulate[d] that the removal of the reference to the FLSA does not amount to a material modification of the Settlement." (*Id.*) Because the stipulation cures the issue related to the FLSA release, the stipulation is approved and reference to the FLSA is deemed stricken.

## APPOINTMENT OF SETTLEMENT ADMINISTRATOR

Class Counsel request the Court appoint Phoenix Settlement Administration as the Settlement Administrator. (Doc. 202-1 at 13.) Under the terms of the agreement, the Settlement Administrator will be responsible for "printing, distributing, and tracking forms for this Settlement, calculating estimated amounts per Class Member, tax reporting, distributing all payments from the Gross Settlement Amount (including conducting skip trace address searches, as necessary), and providing necessary reports and declarations…." (Doc. 202-3 at 8-9, Settlement § III.C.3.) With an updated class of 4,202 individuals, Phoenix now expects its administration costs to be $26,800.06, but indicated the company will accept $25,000 for the administration. (Doc. 202-5 at 2; Doc. 202-1 at 13.) Recently, the Court approved a comparable amount for administration costs for a class settlement. *See Ramirez v. Merrill Gardens LLC*, 2024 WL 3011142, at *31 (E.D. Cal. June 10, 2024) (approving $30,000 in administration costs for a class of nearly 4,700 individuals at the final approval stage) Accordingly, the Court finds the estimated costs are reasonable. Based upon the recommendation and request of counsel, Phoenix is appointed as the Settlement Administrator.

## APPROVAL OF CLASS NOTICE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. The Federal Rules of Civil Procedure indicate a "notice must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

32

objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**I.      Content of the Notice**

Gomez submitted the proposed Notice and the "Election to Not Participation in Settlement" form (collectively, the "Notice Packet"). (Doc. 202-4 at 2-7.) The Notice provides information regarding the background of the action and claims asserted by Gomez that resolved as a result of settlement, and defines the class. (*Id.* at 2.) The Notice also explains the terms and provisions of the Settlement, including the claims released by participating class members and the binding effect of judgment. (*Id.* at 2-6.)

The Notice Packet will include an estimate of the Class Member's share based upon the number of workweeks employed by Defendant during the relevant period, and informs class members how to challenge any information used to calculate the payment. (Doc. 202-4 at 3-4.) Further, the Notice informs class members of the payments to be made from the Gross Settlement Amount— including attorney's fees and costs totaling $60,266 and the class representative payment of $5,000— and that payments from the Gross Settlement Amount are subject to Court approval. (*Id.* at 3.) The Notice explains the rights and procedures to object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id.* at 4-6.) Finally, the Notice informs class members: "You also have the right to retain an attorney, at your own expense, to speak on your behalf." (*Id.* at 6.)

Upon review of the proposed Notice Packet, the Court finds the content is adequate and satisfies the requirements of Rule 23(c)(2)(b).

**II.      Method and Administration of Notice Packet**

Within five days of the date of service of this order, Defendant "shall provide the Settlement Administrator and Class Counsel with the names, most recent known mailing address and telephone number (if available), Social Security Number and the respective number of pay periods that each Class Member worked for Jacobo in a Covered Position during the Settlement Class Period." (Doc. 202-3 at 14, Settlement § III.F.2.e.) This Class list and data shall be provided "in a readable Microsoft Office Excel spreadsheet." (*Id.*)

Within 10 days of receiving this data, the Settlement Administrator will mail the Notice Packet

to all class members.  (Doc. 202-3 at 15, Settlement § III.F.2.g.)  However, "[p]rior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database or any other similar services available, such as provided by Experian, to update and correct for any known or identifiable address change." (*Id.*, § III.F.2.f.)  For any Notice Packet returned due to an incorrect address, "the Settlement Administrator will perform a computer/SSN and 'skiptrace' search" for a current address, and re-mail the packet.  (*Id.*)  If a current address is not located, "the Class Notice for that individual will be deemed undeliverable." (*Id.*)

Class members who elect not to participate in the Settlement will have 45 days from date the Notice is mailed to submit the "Election Not to Participate in Settlement" form to the Settlement Administrator.  (Doc. 202-3 at 15, Settlement § III.F.2.c; *see also* Doc. 47-4 at 8.)  Individuals who properly complete the "Election Not to Participate in the Settlement" will not be entitled to a settlement share; will not be bound by the terms of the settlement agreement; and will not have the right to object, appeal, or comment upon the terms.[10]  (*See id.* at 19, § III.E.3; *see also* Doc. 202-4 at 7.)

Similarly, class members have 45 days to submit any written objection to the Settlement Administrator. (Doc. 202-3 at 14, Settlement § III.F.2.d.)  An objection must include:

> (i) the objecting person's full name, address, and telephone number; (ii) the words "Notice of Objection" or "Formal Objection"; (iii), in clear and concise terms, the legal and factual arguments supporting the objection; (iv) list identifying witness(es) the objector may call to testify at the Final Approval hearing; and (v) provide true and correct copies of any exhibit(s) the objector intends to offer at the Final Approval hearing.

(*Id.*)  Class members who fail to comply with these requirements "shall be deemed to have waived any and all objections." (*Id.*)  In addition, class members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection that includes notice of intention to appear.  (*Id.*)

Prior to the hearing for final approval, the Settlement Administrator shall serve the parties with

---

[10] If an individual submits a deficient "Election Not to Participate," the Settlement Administrator will return the form to the Class Member within seven days, "explaining the deficiencies and stating that the Class Member will have ten (10) business days from the date of the deficiency notice to correct the deficiency and resubmit the form." (Doc. 202-3 at 15, Settlement § III.F.2.c.i.)  However, the period for curing a deficient form does not extend the original 45-day deadline.  (*Id.*)

a declaration due diligence, setting forth its compliance with its obligations under the Agreement. (Doc. 202-3 at 16.)  The declaration shall include the number of class members to whom Notice Packets were sent and the number of class members to whom the Notice Packets were delivered.  This declaration shall also be filed with the Court with the motion for final approval.  (*Id.*)

### III.     Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including deadlines for requesting exclusion, any objections to the Settlement, and disputes of the employment information for the class member.  The Notice Packet also must be updated with contact information for Phoenix as the Settlement Administrator.  In addition, Plaintiff should correct the case number for this action (which is now Case No. 1:15-cv-1489-JLT-BAM), to prevent any confusion if class members elect to file objections.  (*See* Doc. 202-4 at 2.)  The reference to the Fair Labor Standards Act must also be removed from the Notice, given the modification to the release discussed above.  (*See id.*)

If Gomez intends to issue a Spanish language translation of the Notice, she is informed the Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement.  Accordingly, the Court **ORDERS**:

1.     Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

> All individuals who have been employed or are currently employed by Defendant J. Jacobo Farm Labor Contractor Inc. as a non-exempt "field worker" or agricultural laborer who worked at any time from September 30, 2011 to November 5, 2019.

2.     The parties' "Stipulation to Amend the Settlement Agreement to Remove [the] Sole Mention of FLSA" dated May 9, 2024 (Doc. 195) is **APPROVED**, and the reference to the FLSA as a "Released Claim" is **STRICKEN**.

3.     The parties' "Stipulation to Remove Minimum Payment Language from Settlement

Agreement" dated September 13, 2024 (Doc. 203) is **APPROVED**, and Section III.E.3 is **STRICKEN** from the Settlement Agreement.

4.     Preliminary approval of the parties' proposed settlement agreement, as modified by the stipulations, is **GRANTED**.

5.     The proposed notice plan and deadlines are **APPROVED**.

6.     Marisol Gomez is **APPOINTED** the Class Representative for the Settlement Class.

7.     The firms of Mallison & Martinez and Martinez Aguilasocho Law are **APPOINTED** as Class Counsel.

8.     Phoenix Settlement Administration is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement.

9.     Costs of settlement administration shall not exceed $25,000.

10.     The Class Representative incentive award for Plaintiff is **GRANTED** preliminarily up to the amount of $5,000, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

11.     Class Counsel's request for fees not to exceed 1/3 of the gross settlement amount and identified costs is **GRANTED** preliminarily, subject to review of counsel's petition for fees and costs at the Final Approval and Fairness Hearing.  Class members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

12.     The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **December 20, 2024.**

13.     The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval <u>within two days</u> of the date of service of this order.

14.     Defendants **SHALL** provide the Settlement Administrator with the class list and data by **October 1, 2024**.

15.     The Settlement Administrator **SHALL** mail the approved Class Notice Packet by

**October 11, 2024**.

16.     A class member who wishes to be excluded from settlement shall postmark the "Election Not to Participate in the Settlement" no later than **November 25, 2024**.

17.     Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator no later than **November 25, 2024**.

18.     A Final Approval and Fairness Hearing is SET for **January 27, 2025** at 1:30 p.m. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement, including the class representative enhancement request and motion for attorneys' fees.

19.     Class members may appear at the hearing on **January 27, 2025**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the class member must file comments with the Clerk of this Court indicating briefly the nature of the class member's comments, support, or objection.

20.     <u>The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court</u> on or before **December 20, 2024.**

21.     The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members.

22.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **September 25, 2024**

UNITED STATES DISTRICT JUDGE